IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:14-CV-8-BO

PENNSYLVANIA NATIONAL MUTUAL )
CAUSALTY INSURANCE COMPANY, )
)
               Plaintiff, )
)
v. )     O R D E R
)
BEACH MART, INC., )
)
             Defendant. )

This cause comes before the Court on plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Defendant has responded, plaintiff has replied, and the matter is ripe for ruling. Also before the court is the parties' joint motion for clarification of the scheduling order. For the reasons that follow, plaintiff's motion for judgment on the pleadings is granted in part and the motion for clarification is denied as moot.

## BACKGROUND

Plaintiff, Pennsylvania National Mutual Casualty Insurance Company (Penn National) filed this declaratory judgment action under 28 U.S.C. § 2201, on February 4, 2014, seeking a declaration of non-coverage relative to four businessowners liability policies and four commercial umbrella policies issued to Beach Mart. Penn National's complaint stems from a matter currently pending before this Court, styled as *Beach Mart, Inc. v. L&L Wings, Inc.*, No. 2:11-CV-44-BO (E.D.N.C.) ("underlying action"). The underlying action was brought by Beach Mart against L&L

Wings on September 9, 2011, for breach of contract and a declaratory judgment that Beach Mart had fully complied with a 2005 Agreement with L&L Wings to use the name SUPER WINGS in retail stores and that L&L Wings had no lawful grounds to terminate the 2005 Agreement. *Id.* at [DE 1]. Beach Mart has since filed an amended complaint, alleging claims against L&L Wings for fraudulent inducement to contract, negligent misrepresentation, cancellation of trademark registrations, false or fraudulent trademark registration, unfair and deceptive trade practices, and declaratory judgment. *Id.* at [DE 184]. L&L Wings has asserted counterclaims against Beach Mart in the underlying action. The counterclaims currently pending against Beach Mart in the underlying action are for breach of contract, specifically breach of the 2005 Agreement entered into between L&L Wings and Beach Mart with an effective date of August 29, 2005; breach of the implied covenant of good faith and fair dealing; a declaration that Beach Mart acquired no rights to the WINGS trademark or otherwise as a result of an assignment agreement; and a declaration that L&L Wings is the owner of the WINGS name in connection with retail stores, beachwear, and beach-related products. *Id.* at [DE 304]. Penn National has been providing a defense to Beach Mart on the counterclaims, subject to a complete reservation of rights.

This declaratory action was stayed on May 5, 2014, on the parties' consent motion and the stay was lifted on September 25, 2017. Penn National thereafter filed an amended complaint, to which Beach Mart filed an answer and counterclaims and defendant L&L Wings filed an answer. Beach Mart's counterclaims against Penn National were filed on October 2, 2017, and allege that Penn National breached its insurance contract, acted in bad faith, and engaged in unfair and deceptive trade practices in violation of N.C. Gen. Sta. § 75-1.1. [DE 41]. Beach Mart further seeks a declaratory judgment that Penn National is required to defend and indemnify Beach Mart against L&L Wings' counterclaims in the underlying action. Penn National filed its motion for

judgment on the pleadings on December 13, 2017, and on January 4, 2018, stipulated to the dismissal of defendant L&L Wings.

## DISCUSSION

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) allows for a party to move for entry of judgment after the close of the pleadings stage, but early enough so as not to delay trial. Fed. R. Civ. P. 12(c). Courts apply the Rule 12(b)(6) standard when reviewing a motion under Rule 12(c). *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 375 (4th Cir. 2012). "Judgment on the pleadings is not properly granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *United States v. Any & all Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). It is within a court's discretion whether to consider matters outside the pleadings if presented, and thereby convert the motion for judgment on the pleadings to one for summary judgment under Rule Fed. R. Civ. P. 56. *A. S. Abell Co. v. Baltimore Typographical Union No. 12*, 338 F.2d 190, 193 (4th Cir. 1964).

A brief summary of the factual background of the underlying action is necessary to resolve the instant motion. Beach Mart and L&L Wings both operate retail stores at beach locations which sell beachwear, sunglasses, souvenirs, and similar items; Beach Mart operates stores only in North Carolina while L&L Wings operates stores in North Carolina and other states, including Florida and South Carolina. L&L Wings alleges that it has operated its stores under the WINGS trademark since 1978. Prior to 1995, Beach Mart's principal, who had formerly been employed by or otherwise in business with L&L Wings, began doing business as Beach Mart. Beach Mart and L&L Wings entered into an agreement in 1995 which described the terms under which Beach Mart was permitted to use the WINGS name for its stores. The 1995 Agreement expired on

January 1, 1996, after which time Beach Mart continued to use the WINGS trademark in its operation of business, including by using it in store signage, merchandise tags, and advertising. In 2005, Beach Mart and L&L Wings entered into a second agreement to resolve their disputes regarding Beach Mart's ongoing use of the WINGS trademark after the expiration of the 1995 Agreement. The 2005 Agreement prohibited Beach Mart from using the WINGS trademark on a standalone basis after December 31, 2005, but permitted it to use WINGS modified by "super" or "big" in eight North Carolina counties. L&L Wings contends that Beach Mart continued to use the WINGS trademark standing alone, including on merchandise tags, receipts, advertising, and store signage, after December 31, 2005. L&L Wings further alleges that where Beach Mart did use the modifier "super" or "big" it did so in such a way as to render the modifier undetectable. L&L Wings further alleges that Beach Mart employees answered the telephone by identifying the store as "Wings," that Beach Mart constructed and continues to operate stores whose façade is identical to that of L&L Wings', and that Beach Mart adopted the advertising slogan "All you need for the beach," which is nearly identical to L&L Wings' slogan "All you need to reach the beach." *See* No. 2:11-CV-44-BO (E.D.N.C.) ([DE 1; 18; 21; 184; 304].

Penn National issued Businessowners Liability policies to Beach Mart, with coverage beginning January 1, 2008, and coverage renewed to cover the periods of 2009, 2010, and 2011. Penn National also issued Commercial Umbrella Liability policies to Beach Mart with coverage beginning January 1, 2008, and coverage renewed to cover 2009, 2010, and 2011. The relevant policy provisions in the Businessowners Liability (BL) policies provide coverage for advertising injury caused by an offense committed in the course of advertising the policy-holder's goods, products, or services, *but only* if the offense was committed in the coverage territory during the policy period. [DE 1-3 at 51 of 105] Businessowners' Liability Coverage Form § A(1)(b)(2)(b).

The policy defines an advertising injury to include an injury arising out of one or more offenses, including misappropriation of advertising ideas or style of doing business and infringement of copyright, title, or slogan. *Id.* at [61 of 105] § F(1). The Commercial Umbrella Liability (UL) policies provide coverage for advertising injury when the underlying insurance either does not provide coverage or has been exhausted *but only* if the offense was committed within the coverage territory during the policy period. [DE 1-8 at 24 of 45] Commercial Umbrella Liability Coverage Form at § B(1)(a)-(b). The applicable policy exclusion provisions raised by Penn National state that the BL policies do not apply to personal or advertising injuries arising out of oral or written publication of material whose first publication took place prior to the beginning of the policy period, and further defines an advertising injury to *not* include breach of contract, other than misappropriation of advertising ideas under an implied contract, or injuries arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. [DE 1-3 at 56-57 of 105 ] §§ B(1)(p); (q). The UL policy exclusions exclude coverage for personal or advertising injury arising out of material published prior to the policy period or arising out of breach of contract, except an implied contract to use another's advertising idea in your advertisement. [DE 1-8 at 24 of 45] §§ 2(A)(3); (6).

> Generally speaking, the insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy. An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial. When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable.

*Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691 (1986).[1] In order to determine whether the insurer has a duty to defend, a court considers the language of the policy, including its exclusions, and determines whether the events as alleged in the underlying pleadings are covered by the policy terms. *Id.* In North Carolina, insurance policy provisions that extend coverage are construed liberally, while policy provisions that exclude coverage are strictly construed. *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 9-10 (2010). Additionally, even if some of the allegations do not fall within the policy's coverage, so long as some allegations are covered by the policy there is a duty to defend. *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Sharpe Images, Inc.*, 3:11-CV-150, 2012 WL 3962747 (W.D.N.C. Sept. 11, 2012).

Having compared the counterclaims alleged by L&L Wings to the applicable policy provisions, the Court holds there is no duty to defend. L&L Wings has alleged that Beach Mart used WINGS on a stand-alone basis continually from January 1, 1995, and SUPER WINGS continually from January 1, 2006. The BL and UL policies at issue did not become effective until January 1, 2008, and both policies expressly apply only to actions or offensive conduct committed during the policy period, and further exclude from coverage injuries arising from actions which first occurred prior to the policy period. L&L Wings has alleged that Beach Mart's offensive use of WINGS and SUPER WINGS has been continuous and ongoing since at least 2006, and thus Beach Mart's offensive conduct began outside the coverage period and is not covered. The Court must also determine, however, whether any of the specific offensive conduct complained of by L&L constitutes a covered event, as Penn National would have a duty to defend even where there

---

[1] The parties do not dispute that North Carolina law governs the interpretation of the policies at issue. *See, e.g., Westfield Ins. Co. v. Nautilus Ins. Co.*, 154 F. Supp. 3d 259, 264 (M.D.N.C. 2016).

6

is a mere possibility that the potential liability is covered. *See Waste Mgmt.,* 315 N.C. at 691 n.2. (allegations that describe hybrid of covered and excluded events trigger duty to defend).

There are currently two substantive counterclaims alleged against Beach Mart – one for breach of contract and one for breach of an implied duty of good faith and fair dealing. Also pending against Beach Mart are two declaratory judgment claims seeking declarations that L&L Wings owns the WINGS trademark in relation to retail stores, beachwear, and beach-related products and that Beach Mart has no rights in the WINGS mark. L&L Wings' prior counterclaims which were dismissed by the Court on October 3, 2014, concerned trademark infringement and unfair competition claims against Beach Mart for its use of the WINGS and SUPER WINGS trademarks. *Beach Mart*, No. 2:11-CV-44-BO [DE 18]; [DE 233]. As noted above, these claims all plainly arise out of the same continued use of the WINGS mark about which L&L Wings has complained since sometime prior to the 2005 Agreement.

Beach Mart argues that, although some offending conduct took place prior to the policy period, the fact that some conduct took place after the policy period is sufficient to bring its claim within the terms of the policy. Indeed, the North Carolina Court of Appeals has held that an exclusion for written or oral material first published prior to policy coverage period does not excuse an insurer's duty to defend simply because some offending statements were made or materials published both before and during the policy period. *Kubit v. MAG Mut. Ins. Co.*, 210 N.C. App. 273, 289 (2011). However, the *Kubit* court went on to note that so long as the statements or materials published are substantially the same as the offending material published prior to the policy period, the exclusion applies and there is no duty to defend. *Id.* at 290.

Here, there is no doubt that the offending material which was published prior to the coverage period is the same or substantially similar to what was published during the coverage

7

period. L&L Wings alleges that, "[s]ubsequent to December 31, 2005, Beach Mart has used, and continues to use, the WINGS trademark," and it seeks damages on account of "Beach Mart's continual violation of the 2005 Agreement and unauthorized use of the WINGS trademark". *Beach Mart*, No. 2:11-CV-44-BO [DE 304] at 14;17. The allegedly offending material at issue, whether it is present in building facades, advertising slogans, merchandise tagging, or otherwise, has been substantially the same since in first occurred. Although L&L Wings contends that the language in its counterclaims which references Beach Mart's actions "subsequent to December 31, 2005" is not specific enough to determine at this stage whether the offending material was published prior to the policy period, a fair reading of the allegations contained in the counterclaims reveals otherwise. Specifically, L&L Wings expressly complains about Beach Mart's *continued* use of the WINGS trademark beginning at a minimum when Beach Mart ceased paying fees to L&L Wings for use of the mark as provided by the 1995 Agreement and prior to the parties' agreeing to terms of use of the WINGS trademark in the 2005 Agreement on August 29, 2005. *Beach Mart*, No. 2:11-CV-44-BO [DE 304] at 13. The variation of Beach Mart's use of the trademark, whether on merchandise tags or in a telephone greeting, "occur[s] within a common, clearly identifiable advertising objective, do[es] not give rise to 'fresh wrongs'" which would trigger coverage. *Hanover Ins. Co. v. Urban Outfitters, Inc.*, 806 F.3d 761, 768 (3d Cir. 2015). Rather, where, as here, an insured has engaged in "similar liability-triggering behavior both before and during [the] coverage period," a prior publication exclusion is properly applied. *Id.* at 770.

Accordingly, because the advertising injury alleged by L&L Wings regarding Beach Mart's use of the WINGS trademark is substantially the same over time without any meaningful interruption, it is thus not covered under either the BL or UL policies. The Court therefore holds that Penn National has no duty to defend Beach Mart as to the counterclaims brought by L&L

8

Wings in the underlying action. Because the question of whether the duty to indemnify is generally not ripe until after facts in the underlying case have been found, the Court will dismiss that claim without prejudice subject to Penn National's re-filing at the appropriate time. *See Ellett Bros. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001); *see also Travelers Indem. Co. v. Miller Bldg. Corp.*, 221 F. App'x 265, 267 (4th Cir. 2007) ("As a general practice, courts wait to decide coverage until litigation or agreement has determined the particular damage for which an insured will be responsible.").

The Court further holds that Beach Mart has failed to state a claim for which relief can be granted on its counterclaims against Penn National for breach of contract, bad faith, unfair and deceptive trade practices, and for declaratory judgment that Penn National has a duty to indemnify and defend. As Penn National has no duty to defend, there has been no breach of contract, bad faith, or unfair and deceptive trade practice by Penn National to date. Beach Mart has provided no authority which would suggest that, where there is no duty to defend, there can be bad faith in the handling of an insured's claim. *See, e.g., Old Republic Ins. Co. v. Horn,* No. 1:08CV402, 2010 WL 3608323, at *5 n.4 (M.D.N.C. Sept. 8, 2010) ("since there is no coverage, there can be no bad faith in the claims handling."). As the determination of Penn National's duty to indemnify is not ripe, nor are any counterclaims arising out of any actions related to Penn National's indemnification.

## CONCLUSION

For the foregoing reasons, Penn National's motion for judgment on the pleadings on its claims as well as Beach Mart's counterclaims [DE 46] is GRANTED IN PART and DENIED IN PART. Penn National is entitled to judgment in its favor on its duty to defend and on Beach Mart's counterclaims arising out of a duty to defend. Penn National's claim for declaratory judgment as

to its duty to indemnify and Beach Mart's counterclaims arising out of Penn National's duty to indemnify are not ripe and are DISMISSED WITHOUT PREJUDICE. The joint motion for clarification [DE 42] is DENIED AS MOOT.

The clerk is DIRECTED to enter judgment accordingly and close the file.

SO ORDERED, this 5 day of March, 2018.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

10