# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## NORTHERN DIVISION
### NO.: 2:14-CV-00008-FL

| | |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br><br>BEACH MART, INC. and L&L WINGS, INC.,<br><br>　　　　Defendants. | **MEMORANDUM OF LAW IN OPPOSITION TO BEACH MART'S MOTION TO STRIKE UNTIMELY EXPERT REPORT** |

This matter is before the Court on Beach Mart, Inc.'s (hereinafter "Beach Mart") Motion to Strike Untimely Expert Report. In support of its opposition to Beach Mart's motion, Plaintiff/Counterclaim-Defendant, Pennsylvania National Mutual Casualty Insurance Company (hereinafter "Penn National") submits its Memorandum of Law In Opposition To Beach Mart, Inc.'s Motion To Strike Untimely Expert Report.

## NATURE OF THE CASE

Penn National filed this declaratory judgment action seeking a determination of coverage under four businessowners liability and four

commercial umbrella policies issued by Penn National to Beach Mart. (D.E. 1). The present coverage dispute stems from a matter pending before this Court, styled: "*Beach Mart, Inc. v. L&L Wings, Inc.*," Civil Action No. 2:11-cv-44. (D.E. 1). In the Underlying Action, Beach Mart and L&L Wings, Inc. ("L&L") dispute the rights of each arising out of a contract regarding the use of certain intellectual property. Beach Mart requested a defense and indemnification from Penn National under the policies for counterclaims L&L asserted in the Underlying Action. Penn National contends it does not have any defense obligation to Beach Mart or any indemnity obligation to either Beach Mart or L&L under the policies at issue.

## STATEMENT OF FACTS

A misunderstanding by Beach Mart as to the function of Penn National's timely served November 16, 2020 expert disclosure forms the basis of this motion. (Expert Disclosure by Penn National at Exhibit "A"). Penn National maintains its disclosure, both procedurally and substantively, was timely served in compliance with the governing Case Management Order and party stipulation (hereinafter, the "CMO" and "Stipulation," respectively). (D.E. 70 ¶ A.8; Stipulation annexed to Beach Mart's motion at Exhibit "B").

The district court filed the CMO on February 26, 2020 which ordered that the parties' disclosures required by Rule 26(a)(2) shall be served by

plaintiff by July 31, 2020, and by defendant by August 30, 2020. Disclosures and reports by any rebuttal experts shall be served by September 30, 2020. (D.E. 70 ¶ A.8). Penn National did not serve disclosures by July 31, 2020. In August 2020, Beach Mart requested that the parties stipulate to an extension to serve disclosures. The parties stipulated that the deadline for defendant's disclosure of expert witness testimony would be October 15, 2020 and the disclosure of rebuttal experts would be November 14, 2020. (Stipulation annexed to Beach Mart's motion at Exhibit "B").

Beach Mart did not file any disclosures by October 15, 2020. The parties informally agreed that they would extend the deadline, but no deadline was ever agreed to, nor was the scheduling order amended in October or November 2020. The scheduling order was not modified until December 22, 2020.

Although Beach Mart did not disclose any experts, the deadline for Penn National to disclose rebuttal experts fell on November 14, 2020. If Penn National did not serve its expert disclosure it risked the imposition of discovery sanctions. Fed. R. Civ. P. 37 (b)(2)(A). Penn National had identified an expert to rebut the counter-claims raised by Beach Mart, and Penn National served that disclosure along with an expert report on November 16, 2020 (November 14, 2020 was a Saturday).

A review of the contents of Penn National's disclosure and a comparison to Beach Mart's counterclaims and expert disclosure makes clear Penn

National's expert disclosure concerns the same subject matter addressed in the counterclaims and Beach Mart's expert disclosure. (Expert Disclosure by Penn National at Exhibit "A"; D.E. 41 Answer and Counter Claim; Expert Disclosure by Beach Mart at Exhibit "B"). Beach Mart's counterclaims concern, *in relevant part*, claims for compensatory, treble, and punitive damages, as well as attorneys' fees, related to Penn National's breach of contract, bad faith, and unfair and deceptive acts and practices, all of which are addressed in Penn National's expert disclosure. By category, Beach Mart alleges Penn National committed the following wrongful acts:

(a) Penn National wrongly denied coverage and failed to do so within a reasonable time (D.E. 41 at ¶¶ 11 – 13, 56, 62; Expert Disclosure by Penn National at Exhibit "A" at ¶¶ 13, 14, 20, 33, 39);

(b) Penn National failed to conduct a reasonable claims investigation (D.E. 41 at ¶ 57; Expert Disclosure by Penn National at Exhibit "A" at ¶¶ 9, 13, 14, 15, 17, 33, 36);

(c) Penn National failed to communicate with Beach Mart about the claim in a reasonably prompt manner and misrepresented insurance policy provisions concerning coverage (D.E. 41 at ¶¶ 54, 55; Expert Disclosure by Penn National at Exhibit "A" at ¶¶ 10 – 13, 17, 36);

(d) Penn National failed to promptly, fairly, and reasonably attempt to settle the claim in good faith (D.E. 41 ¶ 62; Expert Disclosure by Penn National at Exhibit "A" at ¶¶ 13, 33, 39);

(e) Penn National delayed the appointment of experienced counsel (D.E. 41 at ¶¶ 51, 52; Expert Disclosure by Penn National at Exhibit "A" at ¶¶ 22, 23, 38);

(f) Penn National failed to reimburse post-tender attorneys' fees (D.E. 41 ¶ 53; Expert Disclosure by Penn National at Exhibit "A" at ¶ 26); and

(g) Penn National is responsible for the payment of Beach Mart's attorneys' fees as permitted by law (D.E. 41 at *Wherefore* clause ¶ 7; Expert Disclosure by Penn National at Exhibit "A" at ¶ 26).

Beach Mart's expert disclosure addresses the same categories of issues addressed in the counterclaims and Penn National's expert disclosure:

(a) Penn National's claims handling;

(b) Penn National's claims investigation before rendering a coverage decision;

(c) Penn National's consideration of Beach Mart's interests, including the accuracy of insurance policy information communicated to Beach Mart;

(d) Penn National's selection of counsel;

(e) Penn National's non-payment of post-tender fees;

(f) failure to appoint qualified counsel; and

(g) reasonably consider whether Penn National's choice of appointed counsel was in Beach Mart's best interest,

(Expert Disclosure by Beach Mart at Exhibit "B" at pp. 5-6). Though Beach Mart seeks the recovery of all attorney's fees permitted by law, its expert does not address this issue despite Beach Mart's burden to establish such entitlement. *Supler v. FKAACS, Inc.*, No. 5:11-CV-229-FL, 2013 WL 6713120, at *3 (E.D.N.C. Dec. 19, 2013).

## ARGUMENT IN OPPOSITION

### I. PENN NATIONAL TIMELY SERVED ITS EXPERT DISCLOSURE.

The CMO and Stipulation[1] set November 14, 2020 as the date by which Penn National was to serve its expert disclosure addressing the counterclaim

---

[1] The terms of the Stipulation, prepared by Beach Mart's counsel, extended, in error, the deadlines for all Rule 26 expert disclosures to November 14, 2020. Regardless of whether the terms of the Stipulation are construed to have extended the time by which Penn National could serve expert material in support of its affirmative claims for declaratory relief, Penn National's expert disclosure was timely served as a matter of procedure and

allegations and supporting evidence. (D.E. 70 at ¶ 10; Stipulation annexed to Beach Mart's motion at Exhibit "B"). Penn National timely served its expert disclosure[2] even though Beach Mart failed to serve its expert disclosure the previous month. (D.E. 70 at ¶ 10; Stipulation annexed to Beach Mart's motion at Exhibit "B").

The root of the misunderstanding surrounds Beach Mart's failure to timely serve its expert disclosure in October 2020. (*See*, D.E. 70 at ¶ 10 and Stipulation annexed to Beach Mart's motion at Exhibit "B"). Beach Mart's failure to timely make its expert disclosure or secure a mutually agreed upon extension[3] disrupted the contemplated sequencing of the disclosures and denied Penn National's expert the opportunity to address Beach Mart's expert's opinions (which concern the counterclaims). Penn National's disclosure, apparently due to its first-in-time sequencing, mistakenly lead Beach Mart to construe it as an affirmative expert disclosure (even though the content of the disclosure does not address any affirmative claim by Penn National).

---

substance to address Beach Mart's counterclaim allegations and evidence supporting those claims.

[2] The compliance date for Penn National's disclosure fell on a weekend and Penn National made the disclosure the following Monday, November 16, 2020, in accordance with Fed. R. Civ. P. 6(a).

[3] On the day Beach Mart was obligated to make its expert disclosure, counsel for Beach Mart announced a need to extend the deadline. A mutually agreed upon deadline extension was not reached before Penn National was obligated to make its expert disclosure in November 2020. (Beach Mart E-mail at Exhibit "C").

Beach Mart's reliance on the case law cited in support of striking Penn National's expert disclosure is misplaced because Penn National's expert disclosure was not served late or made to support Penn National's affirmative claims (which seek a declaration that Penn National is not obligated to defend or indemnify Beach Mart with respect to the counterclaims against Beach Mart in the underlying action). (D.E. 70 at ¶ 10; Stipulation annexed to Beach Mart's motion at Exhibit "B"; D.E. 41). Beach Mart's argument only works based upon the fiction that the November 16, 2020 disclosure was made pursuant to Fed. R. Civ. P. 26(a)(2)(B). It was not. Penn National's expert disclosure was made timely pursuant to the deadline which existed on the date of filing for disclosures made under Fed. R. Civ. P. 26(a)(2)(D)(ii).

Beach Mart subsequently served its expert disclosure which offered opinions in support of the counterclaim allegations. (Expert Disclosure by Beach Mart at Exhibit "B"). Upon review, Penn National's designated expert prepared a supplemental report representing no change to his previously stated opinions. (Supplemental Expert Disclosure at Exhibit "D"). A review of Beach Mart's expert disclosure reveals the opinions offered parrot the counterclaim allegations.

Beach Mart alleges Penn National committed the following wrongful acts: (a) Penn National wrongly denied coverage and failed to do so within a reasonable time (D.E. 41 at pp. 11 – 13, 56, 62; Expert Disclosure by Penn

National at Exhibit "A" at ¶¶ 13, 14, 20, 33, 39); (b) Penn National failed to conduct a reasonable claims investigation (D.E. 41 at ¶ 57; Expert Disclosure by Penn National at Exhibit "A" at ¶¶ 9, 13, 14, 15, 17, 33, 36); (c) Penn National failed to communicate with Beach Mart about the claim in a reasonably prompt manner and misrepresented insurance policy provisions concerning coverage (D.E. 41 at ¶¶ 54, 55; Expert Disclosure by Penn National at Exhibit "A" at ¶¶ 10 – 13, 17, 36); (d) Penn National failed to promptly, fairly, and reasonably attempt to settle the claim in good faith (D.E.41 at ¶ 62; Expert Disclosure by Penn National at Exhibit "A" at ¶¶ 13, 33, 39); (e) Penn National delayed the appointment of experienced counsel (D.E.41 at ¶¶ 51, 52; Expert Disclosure by Penn National at Exhibit "A" at ¶¶ 22, 23, 38); (f) Penn National failed to reimburse post-tender attorneys' fees (D.E.41 at ¶ 53; Expert Disclosure by Penn National at Exhibit "A" at ¶ 26); and (g) Penn National is responsible for the payment of Beach Mart's attorneys' fees as permitted by law (D.E. 41 at *Wherefore* clause ¶ 7; Expert Disclosure by Penn National at Exhibit "A" at ¶ 26).

Beach Mart's expert disclosure addresses the same categories of issues addressed in the counterclaims and Penn National's expert disclosure: (a) Penn National's claims handling; (b) Penn National's claims investigation before rendering a coverage decision; (c) Penn National's consideration of Beach Mart's interests, including the accuracy of insurance policy information

communicated to Beach Mart; (d) Penn National's selection of counsel; (e) Penn National's non-payment of post-tender fees; (f) failure to appoint qualified counsel; and (g) reasonably consider whether Penn National's choice of appointed counsel was in Beach Mart's best interest. (Expert Disclosure by Beach Mart at Exhibit "B" at pp. 5-6).

## II. IF UNTIMELY, PENN NATIONAL'S EXPERT SHOULD NOT BE EXCLUDED.

Penn National contends the November 16, 2020 service of the disclosure was not untimely. At worst, it was an unnecessary filing which forecast Penn National's expert's opinion's to Beach Mart prior to Beach Mart having to disclose their own experts. Beach Mart attempts to create a fiction that the November 16, 2020 disclosure is not a rebuttal disclosure under Fed. R. Civ. P. 26(a)(2)(D)(ii). Rather, Beach Mart wants to claim, again by creating a fiction, that the report is an expert report under Rule 26(a)(2)(B). This is simply not true. Nonetheless, the November 16, 2020 disclosure was substantially justified and harmless. In determining whether an untimely disclosure was substantially justified or harmless, "a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose

the evidence." *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F3d 592, 597 (4th Cir. 2003). The application of these factors to the present matter confirm the disclosure was substantially justified and harmless.

A. <u>The Disclosure Created No Surprise Against Beach Mart</u>.

The November 16, 2020 disclosure was harmless and not prejudicial because Beach Mart was in receipt of the disclosure nearly three months before Beach Mart made its expert disclosure. Penn National's expert disclosure, if anything, was served out-of-turn and first-in-time and for that reason alone, Beach Mart cannot claim surprise.

Furthermore, the amount of surprise, if any, would be minimal as the expert disclosure report mimicked the allegations in the counter-claim. As detailed above, a comparison of the counter-claim, Beach Mart's expert disclosure report, and the substance of Penn National's expert disclosure report confirms this similarity.

Beach Mart has not been prejudiced by either of the disclosures made by Penn National. If anything, Penn National was prejudiced at the time it made its expert disclosure, consistent with the due date in effect at the time of the disclosure, due to Beach Mart's failure to produce any documents or meaningful discovery responses. While these discovery issues persist, the parties are working to resolve each party's respective discovery concerns.

### B. The Ability of That Party to Cure the Surprise

Penn National would question whether or not any "surprise" resulted for Beach Mart. Nonetheless, not only does Beach Mart have the ability to cure the surprise, Beach Mart has already cured the surprise. The expert disclosure served by Penn National in November 2020 benefitted Beach Mart by revealing Penn National's expert's opinions concerning Beach Mart's counterclaims on which Beach Mart maintains the burden of proof. Beach Mart was not hindered in any manner in serving its expert disclosure report; rather, Beach Mart benefited by being able to serve its expert disclosures with knowledge of what Penn National's expert would say in rebuttal.

Additionally, any remaining surprise can be remedied. The discovery process with regard to written discovery, document production, and depositions has been hampered by a multitude of reasons. At present, the parties are discussing whether a joint request to modify the scheduling order should be pursued to accomplish already noticed depositions. Upon information and belief, information obtained at these depositions will bear on the subject matter addressed by the designated experts. Each expert has stated a need to supplement their respective reports should additional information become available. (Expert Disclosure by Penn National at Exhibit "A" at p. 2; Expert Disclosure by Beach Mart at Exhibit "B" at p. 3). Given the

incomplete nature of fact discovery and the intention to jointly seek a discovery extension, along with the reservations stated by each expert to supplement their respective reports upon the receipt of additional information, any harm that may have been caused by Penn National's out-of-turn, but first-in-time expert disclosure can be cured if the anticipated joint discovery extension is granted.

Throughout the course of this litigation, Penn National has been amenable to (perhaps all) discovery extension requests and worked in good faith to resolve all discovery disputes. In that spirit, Penn National has no objection to Beach Mart supplementing its expert disclosure to address Penn National's expert disclosures.

C. <u>The Extent To Which Allowing The Evidence Would Disrupt The Trial</u>

The trial has not, and will not, be disrupted. In fact, the trial is likely to be delayed by completely separate reasons as the underlying dispute in this matter is going to be appealed. As stated above, Beach Mart has already been able to address any surprise. And there remains ample time to cure any surprise going forward, should any surprise remain.

D. <u>The Importance of the Evidence</u>

The evidence is important as it is the rebuttal evidence allowed under Fed. R. Civ. P. 26(a)(2)(D)(ii). As stated above, the disclosures were produced

timely. Even if the disclosures were premature in November, the disclosure was substantially justified and harmless. Striking this important evidence is not appropriate based upon the allegations of Beach Mart when applied to the factors outlines in *Southern States*.

    E. <u>The Nondisclosing Party's Explanation For Its Failure To Disclose The Evidence</u>

Beach Mart's narrative that Penn National deceived Beach Mart and obfuscated the rules governing expert disclosure is patently false and without merit. Penn National made its disclosure on November 16, 2020 because that date complied with the CMO and Stipulation that at that point had not been further amended. Penn National consistently represented to Beach Mart that its expert would offer opinions in response to the counterclaims and all evidence offered in support of the counterclaims, including expert opinion evidence. (E-mails annexed to Beach Mart's motion at Exhibits "G" and "H"). Penn National has never expressed its expert would be anything more than a rebuttal expert. As discussed above, Penn National's expert disclosure only addresses the subject matter relating to issues identified in the counterclaims and, ultimately, in Beach Mart's expert disclosure. *See*, Fed. R. Civ. P. 26(a)(2)(D)(ii). The substance of Penn National's expert disclosure does not address Penn National's affirmative claims for declaratory relief.

Beach Mart's argument that it is impossible for Mr. Paige's report to be a rebuttal report but can only be an original expert disclosure report is simply not supported by reason when the report, despite being served prior to Beach Mart's disclosure, accurately rebuts Beach Mart's expert report. Anticipating the content of Beach Mart's expert disclosure report is not a violation of Rule 26. Providing a rebuttal report prior to receiving Beach Mart's expert disclosure report is not a violation of Rule 26. Beach Mart has made no argument that the subject of the rebuttal report is outside the scope of what would have been included in a rebuttal report. Viewed in the present time, Penn National's expert disclosure report is a proper rebuttal disclosure pursuant to Fed. R. Civ. P. 26(a)(2)(D)(ii), despite the fact it was served two and a half months prior to Beach Mart's expert disclosure report.

Beach Mart's attempt to characterize the expert disclosure as a Rule 26(a)(2)(B) report simply because it was served prior to Beach Mart's expert disclosure in an attempt to claim it is late is hollow. The disclosure report itself confirms its function is a Rule 26(a)(2)(D)(ii) rebuttal report.

Based on the *Southern States* factors and measured against Rule 26's "harmless" standard, if Penn National's expert disclosure is deemed to have been untimely, the balance of factors weighs in favor of not striking the disclosure and, thus the denial of Beach Mart's motion in its entirety.

### III. THE TIMELINESS OF THE NOVEMBER 16, 2020 DISCLOSURE IS ULTIMATELY MOOT.

Following the November 16, 2020 disclosure, the parties agreed to modify the CMO to allow Beach Mart to disclose its experts. The District Court entered an Order to this effect on December 22, 2020. (D.E. 85). The revised schedule allowed Beach Mart to serve disclosures by January 31, 2021, and service of any Rule 26(a)(2)(D)(ii) expert disclosures in rebuttal by February 14, 2021. (D.E. 85),  Beach Mart served its expert disclosure on January 29, 2021.  Penn National served its Rule 26(a)(2)(D)(ii) expert disclosures in rebuttal on February 15, 2021 (February 14th fell on a Sunday).  Any objections to this disclosure, other than those pursuant to Federal Rules of Evidence 702, 703, or 705, must have been served within 14 days of the service of the disclosure. It appears Beach Mart has made no objections to this disclosure, and the time to make any objections has passed.  The February 15, 2021 disclosure was without question timely, regardless if it is the exact same report filed on November 16, 2020.  Again, no objection has been made to the timeliness or the substance of the February 15, 2021 expert disclosure, properly served under Fed. R. Civ. P. 26(a)(2)(D)(ii).  It is irrelevant that Penn National chose to share this disclosure with Beach Mart three months prior.

WHEREFORE, Plaintiff/Counterclaim-Defendant, Pennsylvania National Mutual Casualty Insurance Company, respectfully requests that this Court deny Beach Mart, Inc.'s Motion to Strike Untimely Expert Report.

This the 10th day of March, 2021.

Hedrick Gardner Kincheloe & Garofalo LLP

/s/ David L. Levy
DAVID L. LEVY
NC State Bar No. 34060
Attorney for Plaintiff
6000 Fairview Road, Suite 1000
Charlotte, NC 28210
PH:   704-319-5426
FAX:  704-602-8178
Email:  dlevy@hedrickgardner.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.2(f)(3) of the Local Civil Rules of the Eastern District of North Carolina, counsel certifies that the foregoing memorandum, which is prepared using a proportional font, contains 3441 words (excluding cover, corporate disclosure statement, table of contents, table of authorities, signature blocks, and certificates of counsel), as reported by the word-processing software.

/s/ David L. Levy
NC State Bar No. 34060
Attorney for Plaintiff

## CERTIFICATE OF SERVICE AND FILING

I hereby certify that on March 10, 2021, I electronically filed the foregoing ***Memorandum of Law in Opposition to Beach Mart, Inc.'s Motion to Strike Untimely Expert Report*** with the Clerk of Court using the CM/ECF system, which will send notification of filing to all counsel of record registered to receive service in this action.

This the 10th day of March, 2021.

/s/ David L. Levy
NC State Bar No. 34060
Attorney for Plaintiff