# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### NORTHERN DIVISION
### CIVIL ACTION NO.: 2:14-CV-00008-FL

| | |
|---|---|
| **PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY,**<br><br>                                    **Plaintiff,**<br><br>v.<br><br>**BEACH MART, INC. and L&L WINGS, INC.,**<br><br>                                    **Defendants.** | **MEMORANDUM OF LAW IN SUPPORT OF PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br>**Fed. R. Civ. P. 56** |

NOW COMES Plaintiff Pennsylvania National Mutual Casualty Insurance Company (hereinafter "Penn National"), by and through undersigned counsel, and respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment.

## NATURE OF THE CASE

Penn National filed this declaratory judgment action seeking a determination of coverage under four businessowners liability and four commercial umbrella policies issued by Penn National to Defendant Beach Mart, Inc. (hereinafter "Beach Mart"). [DE-1] The present coverage dispute stems from a matter pending before this Court, styled: "*Beach Mart, Inc. v. L&L Wings, Inc.*," Civil Action No. 2:11-cv-44-BO (hereinafter the "Underlying Action"). [2:11-cv-44-BO DE-1] In the Underlying Action, Beach Mart and L&L Wings, Inc. ("L&L") dispute the rights of each arising out of a contract regarding the use of certain intellectual property. Beach Mart requested a defense and indemnification from Penn National under the policies for counterclaims L&L asserted in the Underlying Action. Penn National has been continuously providing a defense to Beach Mart, subject to a complete reservation of rights from January 2013 through the present; however, Penn National

contends it does not have any defense obligation to Beach Mart or any indemnity obligation to either Beach Mart or L&L under the policies at issue.

Beach Mart has asserted Counterclaims against Penn National for declaratory relief, breach of contract, "bad faith," and unfair and deceptive trade practices. Penn National contends that there is no genuine issue of material fact as to the latter three claims, that such claims are time-barred, and that Penn National is entitled to a judgment as a matter of law on Beach Mart's Second, Third, and Fourth Claims for Relief. In the alternative, Penn National contends that it is entitled to partial summary judgment as to Beach Mart's claims for "bad faith" and unfair trade practices, as well as to any damages sought for breach of contract other than purported attorneys' fees incurred by Beach Mart to defend the Underlying Action between June 8, 2012 (date of the defense tender to Penn National) to January 15, 2013 (the date when Beach Mart acknowledges defense counsel was hired by Penn National).

## STATEMENT OF THE FACTS

I.         RELEVANT FACTS

Pursuant to Local Civil Rule 56.1 (c), Penn National incorporates by reference Plaintiff's Statement of Material Facts and the Appendix thereto.

II.        RELEVANT PROCEDURAL HISTORY

Penn National filed this declaratory judgment action on February 4, 2014. [DE-1] Before responsive pleadings came due, the court stayed this matter on May 5, 2014. [DE-17] Later, the court ordered that this matter remain stayed until L&L answered Beach Mart's amended complaint in the Underlying Action or the date when the court adjudicated any motion to dismiss filed by L&L in response to Beach Mart's amended complaint. [DE-19]

2

More discovery ensued in the Underlying Action and motions resulted in the court dismissing L&L's trademark infringement claims. Thereafter, on February 23, 2017, L&L answered Beach Mart's first amended complaint as well as re-asserted its counterclaims in conformity with the court's directive. [2:11-cv-44-BO DE-304] Specifically, L&L asserted claims for: 1) breach of contract of the 2005 Agreement; 2) breach of implied covenant of good faith and fair dealing; 3) declaratory judgment that Beach Mart acquired no rights in "WINGS" through its agreement with Morrow; and 4) declaratory judgment that L&L is owner of the "WINGS" name. *Id.*

The stay in this matter continued until September 25, 2017, when this Court entered an order lifting the stay and directing Beach Mart and L&L to file responsive pleadings. [DE-38] Thereafter, on October 2, 2017, Penn National filed its first amended complaint [DE-40] On the same day, L&L and Beach Mart answered Penn National's complaint. [DE-39]; [DE-41] Beach Mart asserted counterclaims against Penn National seeking declaratory judgement, and alleging causes of action for breach of contract, bad faith, and unfair and deceptive acts. [DE-41] Beach Mart later reasserted these counterclaims when it answered Penn National's first amended complaint. [DE-44] L&L answered the first amended complaint timely, and Penn National answered Beach Mart's counterclaims on November 6, 2017. [DE-43]; [DE-45]

Penn National filed a Motion for Judgment on the Pleadings on December 12, 2017. [DE-46]; [DE-47] In its Order of March 5, 2018, granting Penn National's Motion in part, this Court relied on the prior publication exclusion to find there was no duty to defend. [DE-57] The Court did not address the breach of contract exclusion or statute of limitations arguments in its March 5, 2018, Order. [DE-57] Beach Mart appealed.

On appeal, the Fourth Circuit held that the prior publication exclusion did not apply to bar coverage, reversing this Court. [USCA4 18-1285 D.E. 46 Footnote 2] In Footnote Two

to its opinion, the Fourth Circuit Court expressly stated that its opinion "[did] not decide whether any other policy exclusion precludes coverage."  [USCA4 18-1285 D.E. 46 Footnote 2]  The Fourth Circuit also did not reach the issue of whether Beach Mart's state-law counterclaims were time barred.  [USCA4 18-1285 D.E. 46 Footnote 5]

**III.        RELEVANT POLICY PROVISIONS**

In pertinent part, Section A. Coverage of the BL Policies provides as follows:

### A. Coverages

#### 1.        Business Liability

*a. We will pay those sums that the insured becomes legally obligated to pay as damages because of…"personal injury," or "advertising injury."  We will have the right and duty to defend the insured against any "suit" seeking those damages.*

*b. This insurance applies to:*

*(2) To:*

*(b) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;*

*But only if the offense was committed in the "coverage territory" during the policy period.*

The BL Policies define "advertising injury" to include injury arising out of one or more of certain offenses, including "misappropriation of advertising ideas or style of doing business," and "infringement of copyright, title, or slogan."

Similarly, the insuring agreement in the UL Policies states:

### COVERAGE B—PERSONAL AND ADVERTISING INJURY

#### 1.        Insuring Agreement

*a.        We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury"*

4

*when the underlying insurance does not provide coverage or the limits of "underlying insurance have been exhausted."*

**b.** *This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.*

In the UL Policies, "personal and advertising injury" includes injury arising out of "the use of another advertising idea in your 'advertisement'" and/or "infringing upon another's copyright, trade dress, or slogan in your 'advertisement'."

The coverage provided by both the BL Policies and the UL Policies is subject to certain terms, conditions, and exclusions enumerating in the respective contracts. In particular, the BL Policies contain the following exclusions with respect to "advertising injury" relevant to the present facts:

**B. Exclusions**

**1. Applicable to Business Liability Coverage**

**This insurance does not apply to:**

**q. Advertising Injury**

*"Advertising injury" arising out of:*

*(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;*

The UL Policies also contain certain exclusionary provisions of note, including the following:

**2. Exclusions**

*This insurance does not apply to:*

*a. "Personal and advertising injury":*
*…*

5

### *(6) Breach of Contract*

> *Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".*

In the UL Policies, "advertisement" is defined as a "notice that is broadcast or published to the general public…about your goods, products or services for the purposes of attracting customers," including "material placed on the Internet."

## ARGUMENT

The Court has subject-matter jurisdiction based upon diversity, and as such the Court applies state substantive principles and federal procedural rules. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938); *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. If the "moving party discharges its burden ... the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial." *McLean v. Patten Cmtys., Inc.,* 332 F.3d 714, 718-19 (4th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). "In satisfying this burden, the nonmoving party must support the asserted claims with evidence that is significantly probative." *Young v. Prince George's Cty.*, 355 F.3d 751, 755 (4th Cir. 2004); *Hit Prods. Corp. v. Anchor Fin. Corp.*, 215 F.3d 1318 (4th Cir. 2000). The nonmoving party's failure to set forth such evidence renders summary judgment appropriate. *Young*, 355 F.3d at 755 (quoting *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984)).

**I.    PENN NATIONAL HAD NO DUTY TO DEFEND BEACH MART IN THE UNDERLYING ACTION BECAUSE THE POLICY EXPRESSLY EXCLUDED COVERAGE FOR ADVERTISING INJURY ARISING OUT OF BREACH OF CONTRACT.**

**a.    L&L's Original and Amended Counterclaims Solely Arose out of Breach of the 2005 Agreement.**

The businessowners and commercial liability policies issued to Beach Mart by Penn National exclude coverage for advertising injury "arising out of" breach of contract.  These breach of contract policy exclusions relieve Penn National of any duty to defend Beach Mart against L&L's counterclaims.

**Duty to Defend**

The duty to defend is "ordinarily measured by the facts as alleged in the pleadings." *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986).  "The ultimate focus . . . is on the facts that are pled, not how the claims are characterized."  *Holz-Her U.S., Inc. v. United States Fid. & Guar. Co.*, 141 N.C. App. 127, 128, 539 S.E.2d 348, 350 (2000).  When determining duty to defend, the court must employ the "comparison test," reading the pleadings in the context of the policy language to determine whether the insurer had a coverage obligation.  *Waste Mgmt. of Carolinas, Inc.* at 693, 340 S.E.2d at 378.  If the facts alleged "are not even arguably covered by the policy, then the insurer has no duty to defend."  *Id.* at 692, 340 S.E.2d at 378.

The insured "has the burden of bringing itself within the insuring language of the policy."  *Hobson Const. Co., Inc. v. Great Am. Ins. Co.*, 71 N.C App. 586, 590, 322 S.E.2d 632, 635 (1984), *disc. rev. denied* 313 N.C. 329, 327 S.E.2d 890 (1985).  Once the insured shows that the insuring language embraces the particular claim, the burden shifts to the insurer to prove that a policy exclusion excepts that particular claim for coverage. *Id.* The meaning of language used in an insurance policy is a question of law for the court.  *Hartford Cas. Ins.*

7

*Co. v. Greve*, No. 3:17CV183-GCM, 2017 WL 5557669, at \*3 (W.D.N.C. Nov. 17, 2017), *aff'd sub nom. Hartford Cas. Ins. Co. v. Ted A. Greve & Assocs., PA*, 742 F. App'x 738 (4th Cir. 2018). "[I]f the language of the policy is clear and unambiguous, the court must enforce the contract of insurance as it is written." *N. Carolina Farm Bureau Mut. Ins. Co. v. Mizell*, 530 S.E.2d 93, 95 (N.C. Ct. App. 2000).

## North Carolina Courts' Interpretation of Breach of Contract Exclusions

North Carolina courts have not had many occasions to consider the applicability of the breach of contract exclusion, but prior decisions do lend some guidance for interpretation of this portion of the policy under the facts of this case.

The Fourth Circuit evaluated the applicability of the breach of contract exclusion in *Danby of North America, Inc. v. Travelers Ins. Co.*, 25 Fed.Appx. 186, 2002 WL 75841 (4th Cir. 2002). In *Danby*, the insured sought reimbursement of defense costs for an arbitration proceeding brought by a third party due to a license agreement termination by the insured. *Id.* at 189, \* 2. The third party alleged eleven grounds showing why the insured unjustly terminated the license agreement, including two grounds based upon disparaging remarks the insured made to customers of the third party. *Id.* The court considered the breach of contract exclusion and noted that the policy exclusion exempted from coverage advertising injuries that "arise out of" breach of contract. *Id.* at 194. "For an injury to arise out of an event, it must 'spring up, originate' from that event." *Id.* at 193-194. Applying this meaning, the court determined that a third party's claims against the insured arose solely out of the insured's alleged unjust termination of the licensing agreement, and not out of the disparaging statements. *Id.* As such, the court concluded that even if the complaint sufficiently pleaded an advertising injury, the breach of contract exclusion relieved Travelers of any duty to defend. *Id.*

More recently, this Court has agreed with the majority of jurisdictions in applying the "but for" test to the contract language "arising out of" in breach of contract policy exclusions. *Builders Mut. Ins. Co. v. Allora, LLC*, No. 4:11-CV-210-H, 2013 WL 12250811, at \*5 (E.D.N.C. Aug. 13, 2013) (examining breach of contract exclusion in context of duty to indemnify). *See also Looney Ricks Kiss Architects, Inc. v. State Farm Fire & Cas. Co.*, 677 F.3d 250, 257 (5th Cir. 2012). "A claim 'arises out of' a breach of contract only if the injury would not have occurred but for the breach of contract." *Builders Mut. Ins. Co.* 2013 WL 12250811, at \*5.

In the context of coverage but not stemming from an alleged advertising injury, the Middle District of North Carolina also considered whether an insurer owed coverage for a claim sounding in breach of contract that originally began as a property damage loss. *See Westfield Ins. Co. v. Nautilus Ins. Co.*, 154 F.Supp.3d 259 (M.D.N.C. 2016). In *Westfield*, a general contractor hired a restoration company to repair water damage caused by a construction subcontractor. *Id.* at 262. After obtaining the restoration services, the general contractor failed to pay the restoration company for the repairs, resulting in a breach of contract suit. *Id.* The court rejected the argument that the suit between the restoration company and the general contractor arose out of property damage. Rather, the court noted that the damages sought by the restoration company arose out of the general contractor's "non-accidental failure to honor its contractual obligations, which are purely economic losses in nature." *Id.* at 267. "[T]hough the contract between [the restoration company] and [the general contractor] can be traced to the property damage caused by the rain event, [the general contractor's] subsequent breach of that contract represents a separate and independent act severing the causal connection with the water intrusion event." *Id.* at 271. As such, the court found the insurer had no duty to defend.

### L&L's Pleadings and Applicable Policy Language

To resolve the issue of whether Penn National has a duty to defend Beach Mart in the underlying lawsuit against L&L, the court must look to: 1) the insurance policies that Penn National issued to Beach Mart, and 2) L&L's pleadings in the underlying action.

### 1) Policy Exclusions

Beach Mart has alleged that L&L's counterclaims trigger Penn National's duty to defend as they constitute "advertising injuries", which are covered under both the Businessowners Liability Policy and Commercial Umbrella Liability Policy issued to Beach Mart. However, both policies contain exclusions of advertising injuries that arise "out of a breach of contract". Pursuant to this Court's decision in *Builders*, even if L&L's allegations are considered advertising injuries, they fall under the breach of contract exclusions if L&L's alleged injuries would not have arisen but for Beach Mart's alleged breach of contract.

### 2) Pleadings

L&L's Amended Answer and Counterclaims is the controlling document in determining whether Penn National has a duty to defend as "an amended pleading ordinarily supersedes the original and renders it of no legal effect." *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (citations omitted). "Thus, if an amended complaint omits claims raised in the original complaint, the plaintiff has waived those omitted claims." *Id.* 238 at 573. However, this distinction does not necessarily matter, as the facts alleged in both L&L's original counterclaims and amended counterclaims are essentially the same[1]. *Compare* [2:11-cv-44-BO DE-18 ¶¶ 6-27] *with* [2:11-cv-44-BO DE-304 ¶¶ 6-26].

---

[1] *See* USCA4 Appeal: 18-1285, D.E. 46 p. 4, The Fourth Circuit noted that the factual allegations supporting L&L's counterclaims and amended counterclaims "are materially indistinguishable."

The facts as alleged in L&L's counterclaims solely arise out of Beach Mart's alleged breach of the 2005 agreement. L&L's counterclaims devote a multitude of paragraphs to explaining the prior agreements between Beach Mart and L&L and how the prior agreements evolved into the creation of the 2005 Agreement. [2:11-cv-44-BO DE-304 ¶¶ 11-16] These paragraphs also detail the applicable provisions of the 2005 Agreement that L&L believed Beach Mart violated. [2:11-cv-44-BO DE-304 ¶¶ 14] Additionally, the counterclaims extensively list all of the ways in which L&L believed Beach Mart breached the 2005 Agreement. [2:11-cv-44-BO DE-304 ¶¶ 17-26] In fact, all of the wrongs L&L claimed Beach Mart committed that are listed in both the original and amended counterclaims, are included under the heading "Beach Mart's Breach Of The 2005 Agreement" in L&L's amended counterclaims. [2:11-cv-44-BO DE-304 p. 14]

Similar to *Danby* where the court held that all injuries arose from the unjust termination of the licensing agreement, L&L's amended counterclaims, which contain the same facts as L&L's original counterclaims, demonstrate that L&L Wings viewed all of its injuries as arising from the breach of the 2005 Agreement. But for Beach Mart's alleged breach of the 2005 agreement, L&L would not have had any reason to assert claims against Beach Mart.

Not only are L&L's factual allegations based upon a breach of contract, its four alleged claims four relief are contract based: 1) breach of contract; 2) breach of the implied covenant of good faith and fair dealing arising under the 2005 Agreement; and 3) two declaratory judgment claims to determine Beach Mart's ability to use "WINGS" going forward. L&L's amended counterclaims allege Beach Mart breached contractual duties owed to L&L alone and, therefore, arise out of the overarching breach of contract claim.

Furthermore, L&L only sought *damages* from Beach Mart's alleged breach of the 2005 Agreement, an agreement that supposedly allowed Beach Mart to use L&L's trademark in

11

the first place.  [2:11-cv-44-BO DE-304 p. 25 ¶ (a)] Consistent with the court's analysis in *Danby*, L&L sought damages that arise out of Beach Mart's failure to honor its contractual obligations, not the intellectual property infringements themselves.

On its face, the facts pled in L&L's counterclaims all deal with Beach Mart's alleged breach of the 2005 Agreement.  But for the alleged breaches, L&L would not have had claims for liability against Beach Mart.  Thus, when comparing L&L's pleaded allegations to the policy provisions, from the time L&L's original counterclaims were filed, Penn National never had a duty to defend Beach Mart against L&L's counterclaims.

**b.  Even if Penn National Had a Duty to Defend Beach Mart, That Duty Ended When L&L's Trademark Related Counterclaims were Dismissed.**

If this Court determines that Penn National owed a duty to defend Beach Mart based on L&L's original counterclaims, then that duty ended after the court issued discovery sanctions against L&L on October 3, 2014.  In discovery, multiple documents had been discovered revealing that L&L was actually not the owner of the Wings trademark and had hidden this fact from Beach Mart. [2:11-cv-44-BO DE-233, p. 2] As a discovery sanction, Judge Fox precluded L&L from asserting its trademark infringement and unfair competition claims against Beach Mart.  [2:11-cv-44-BO DE-233, p. 33] So, the only remaining claims L&L had against Beach Mart was its claims for breach of contract and breach of implied covenant of good faith and fair dealing. Therefore, at that point in time, L&L's only remaining counterclaims exclusively dealt with breach of contract and fell squarely under the breach of contract exclusions in both policies.

## II. ALTERNATIVELY, PENN NATIONAL SEEKS PARTIAL SUMMARY JUDGMENT AS TO BEACH MART'S COUNTERCLAIMS FOR RELIEF BECAUSE SUCH CLAIMS FAIL AS A MATTER OF LAW.

### a. Beach Mart's Counterclaims Against Penn National are Time-Barred.

#### i. North Carolina law applies to the issue of tolling statutes of limitations and does not permit tolling of Beach Mart's counterclaims.

In a case of diversity jurisdiction, except in matters governed by the federal Constitution or acts of Congress, federal courts apply the substantive law of the state in which it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188 (1938). Penn National's Complaints for Declaratory Judgment seeks interpretation of a North Carolina contract in which North Carolina is the controlling law. [DE-40] Beach Mart's counterclaims are North Carolina state law claims and do not allege a federal question. [DE-44]

In North Carolina, an initial filing does not toll the statute of limitations for a counterclaim. *Pharmaresearch Corp. v. Mash*, 163 N.C. App. 419, 427, 594 S.E.2d 148, 153 (2004). *See also State Farm Mut. Auto. Ins. Co. v. Gaylor*, 190 N.C. App. 448, 451, 660 S.E.2d 104, 106 (2008) (holding that an insured failed to bring counterclaims for contract reformation, negligence, and misrepresentation prior to the three-year statute of limitations). Therefore, a counterclaim filed outside of the limitations period is time-barred.

Like North Carolina's Rule 13, the Federal Rule 13 is silent on tolling. However, the rule developed by federal courts is that the limitations period for a compulsory counterclaim is tolled when the initial complaint is filed, whereas the limitations period for a permissive counterclaim is tolled only when the counterclaim is served. *Aramony v. United Way of Am.*, No. 96 Civ. 3962(SAS), 1998 WL 205331, at *3 (S.D.N.Y. April 27, 1998) (citing *Burlington Indus. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982)).

In *Aramony* the Court noted that Federal Rule 13 is "silent on the issue of tolling" and "governs only the procedural matter of pleading and litigating claims which it defines as counterclaims and crossclaims." 1998 WL 205331, at *3 (S.D.N.Y. April 27, 1998) (quoting *3 Moore's Federal Practice* § 13.11 (2d ed. 1989)). The *Aramony* Court held that where "there is no indication that [a Federal Rule of Civil Procedure] was intended to toll a state statute of limitations, much less that it purported to displace state tolling rules for purposes of state statutes of limitations, the rule does not displace state tolling law." *Id.* (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750-51 (1980)) (bracket insertion in original) (internal quotations omitted). *See also*, *Murray v. Mansheim*, 779 N.W.2d 379, 386-388 (S.D. 2010) (analyzing the circuit split of authority on whether counterclaims are tolled and finding that the majority does not permit tolling).

The Fourth Circuit, has come down on the side of tolling compulsory counterclaims as discussed in *Burlington Indus. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982) and *Kirkpatrick v. Lenoir County Bd. of Educ.*, 216 F.3d 380 (4th Cir. 2000). However, those cases are distinguishable as the Fourth Circuit was interpreting cases of federal question jurisdiction, not questions of substantive state law tolling provisions. *Kirkpatrick v. Lenoir County Bd. of Educ.*, 216 F.3d 380, 387-88 (4th Cir. 2000) ("[h]aving concluded that an action filed in federal district court pursuant to the IDEA is an original civil action, we need not decide whether North Carolina's third days or three year statute of limitations applies").

In *Burlington*, the Fourth Circuit determined that compulsory counterclaims under the Sherman Antitrust Act were tolled by the initial complaint. *Burlington Indus. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982) (*vacating Duplan Corp. v. Deering Milliken, Inc.*, No. 71-306, 1981 WL 2116, at *2 (D.S.C. June 15, 1981) (wherein the District Court for South Carolina gave a brief description of Burlington's counterclaims under the Sherman Act)). As

such the Fourth Circuit did not discuss *Erie* or *Hanna* or the application of state tolling provisions. In stating the "better view" is that tolling applies, the Fourth Circuit cited to Wright & Miller's treatise on federal practice. *Burlington*, 690 F.2d at 389. However, even the authors of Wright & Miller's agree that "the issue probably will be determined by reference to state law. This certainly would be true in diversity actions, since the Supreme Court has held that the source of the statute of limitations in those actions and the mode of measuring it is governed by state law. Moreover, courts also often apply state limitations law in federal-question cases when no contrary federal statute or policy is involved." 21 6 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1419 (3d ed. 1998).

The Fourth Circuit in *Szantay v. Beech Aircraft Corporation,* 349 F.2d 60 (4th Cir. 1965) provided the analysis to resolve federal-state conflict under *Erie* and progeny's outcome-determinative test:

> 1. If the state provision, whether legislatively adopted or judicially declared, is the substantive right or obligation at issue, it is constitutionally controlling.
>
> 2. If the state provision is a procedure intimately bound up with the state right or obligation, it is likewise constitutionally controlling.
>
> 3. If the state procedural provision is not intimately bound up with the right being enforced but its application would substantially affect the outcome of the litigation, the federal diversity court must still apply it unless there are affirmative countervailing federal considerations. This is not deemed a constitutional requirement but one dictated by comity.

*Szantay v. Beech Aircraft Corporation,* 349 F.2d 60, 63-64 (4th Cir. 1965) (holding that Rule 41(d)'s issue of paying costs after a voluntary dismissal under Rule 41(a)(1) falls under the second category of the *Szantay* analysis). *See also Haislip v. Riggs*, 534 F. Supp. 95, 98

15

(W.D.N.C. 1981) (holding that North Carolina Rule 41(a)(1)'s tolling provision was within the first category of the analysis and, therefore, a matter of substantive law).

In North Carolina, the tolling of statute of limitations "is strictly a substantive matter of state law." *Bockweg v. Anderson*, 328 N.C. 436, 439, 402 S.E.2d 627, 629 (1991) (quoting *Kahn v. Sturgil*, 66 F.R.D. 487, 491 (M.D.N.C. 1975)) (addressing the application of North Carolina's one-year tolling provision within North Carolina Rule of Civil Procedure 41(a)(1)). The North Carolina Supreme Court in *Bockweg* and the federal district courts in *Kahn* and *Haislip* do not distinguish certain tolling provisions as substantive and others as procedural. As the *Haislip* Court held, *Erie* commands federal district courts sitting in diversity follow state provisions for tolling of statute of limitations. *Haislip v. Riggs*, 534 F. Supp. 95, 98.

On its face, North Carolina Rule 13 does not toll a counterclaim. In declining to save an untimely counterclaim, the North Carolina Court of Appeals in *Pharmaresearch* recognized that "[h]ad the General Assembly intended for counterclaims to relate back to the date of filing of plaintiff's complaint, it could have so provided." *Pharmaresearch Corp. v. Mash*, 163 N.C. App. at 427, 594 S.E.2d at 153. Therefore, the judicially declared provision in *Pharmaresearch* falls into the first element of the conflict analysis and must be applied in this case to dismiss Beach Mart's counterclaims.

       ii.      <u>Beach Mart's claim for breach of contract arose no later than March 2013 and is time-barred.</u>

Beach Mart's Counterclaim for Breach of Contract alleges that Penn National has failed to provide a defense to Beach Mart against L&L's counterclaims in the Underlying Action but does not state when such breach occurred. [DE-44 ¶¶ 45-46] Beach Mart admits in its factual allegations that Penn National hired attorney David Brown to defend Beach Mart on January 15, 2013, [DE-44 ¶ 12], and that Penn National failed to reimburse it for

attorneys' fees for the period "between the date of tender on June 8, 2012, and January 15, 2013, when David Brown was retained." [DE-44 ¶ 30]

Beach Mart Rule 30(b)(6) designee, attorney Elwood Crouse Gray, Jr., testified that Penn National's breach of contract is either from Penn National's initial retention of David Brown on January 15, 2013, or its failure to respond to March 14, 2013, communication from Wendy Ray at Beach Mart voicing concerns about David Brown. [Deposition of Beach Mart, Inc. by and through its corporate designee, Elwood Crouse Gray, Jr., July 27, 2021, pp. 194:19 – 195:14]

Another of Beach Mart's Rule 30(b)(6) desginees, Womble Bond Dickinson partner, Jack Hicks, testified that the time of Penn National's alleged breach of contract was the period between June 2012 and January 2013. [Deposition of Beach Mart, Inc. by and through its corporate designee, Jack Hicks, September 17, 2021, pp. 303:15 – 304:1]

Beach Mart's expert, Bryan Tilden, testified that Beach Mart's allegation of breach was regarding Penn National's failure to reimburse the insured for defense costs incurred between June 2012 and January 2013. [Deposition of Bryan Tilden, June 23, 2021, pp. 224:22 – 225:2] Further, that such a claim is predicated on the court finding a duty to defend and will only "be conclusive when the court rules." [Tilden Dep., p. 225:1-18]

A three year statute of limitations governs claims for breach of contract. N.C. Gen. Stat. § 1-52(1); *Penley v. Penley*, 314 N.C. 1, 19, 332 S.E.2d 51, 62 (1985). The limitations period begins running when the cause of action accrues. N.C. Gen. Stat. § 1-15; *Miller v. Randolph*, 124 N.C. App. 670, 478 S.E.2d 779, 782 (1996). A cause of action for breach of contract accrues when the breach occurs. *McDonald v. Univ. of N.C. at Chapel Hill*, 299 N.C. 457, 463, 263 S.E.2d 578, 582 (1980).

Beach Mart's claim for breach of contract accrued no later than March 2013. [Gray Dep., p. 195:7-14] The statute of limitations on any breach of contract claims ran no later

than March 2016.  N.C. Gen. Stat. § 1-52(1).  Beach Mart did not file its breach of contracts claims until October 2, 2017; therefore, such claims are time-barred.

      **iii.**      <u>Beach Mart's North Carolina Chapter 58 and Chapter 75 claims for bad faith and unfair and deceptive trade practices arose no later than March 2013 and are time-barred</u>.

Beach Mart's Counterclaim for Bad Faith and UDTP are alleged to arise from (1) Penn National's delay issuing a reservation of rights and hiring David Brown to defend against the Underlying Counterclaims [DE-44 ¶ 51, 55]; (2) Penn National's alleged failure to reimburse Beach Mart's attorney's fees from June 8, 2012 to January 15, 2013, or promptly settle such a claim for payment of fees [DE-44 ¶ 53]; (3) Penn National's alleged misrepresentations in reservation of rights letters to Beach Mart  [DE-44 ¶ 54]; and (4) Penn National's failure to conduct a reasonable investigation.  [DE-44 ¶ 59]; [DE-44 ¶ 62]

Beach Mart Rule 30(b)(6) designee, Womble Bond Dickinson partner Jack Hicks, testified to the following:

- Penn National "refused to reimburse for attorney's fees after knowing all the work that was done," which was known to Beach Mart at the time of David Brown's hiring or within the first quarter of 2013.  [Hicks Dep., pp. 307:23 – 308:1, 308:7-12, 309:4-6, 309:13-15]

- That Beach Mart's allegation that Penn National misrepresented policy provisions was with regard to Penn National's position that it was entitled to select defense counsel, a fact of which Beach Mart was aware at the time of David Brown's hiring in January 2013.  [Hicks Dep., p. 306:11-21]

Beach Mart Rule 30(b)(6) designee, attorney Elwood Crouse Gray, Jr., testified that Beach Mart was aware that its affirmative claims against Penn National had arisen as late as January 2013, but Beach Mart chose not to pursue them.

**Q**. Meaning, correct me if I'm wrong on this, that Beach Mart could have asserted its Counterclaims against Penn National in 2014, immediately, but it chose not to?

...

**A**. This is – I understand procedurally, this litigation was stayed. But, yes, **the factual allegations, particularly the factual allegations and legal theory of not paying the attorney's fees that had been incurred from June 6 through January 15, and/or back to November of 2012 or January 15 of 2013, that claim was there**.

So the bottom line is Beach Mart didn't immediately jump out and come after Penn National.

[Gray Dep., pp. 164:17 – 165:8] [emphasis added]. Further, Mr. Gray, Jr. testified for Beach Mart that the company had no opinion or evidence when any misrepresentation would have been made. [Gray Dep., pp. 197:21 – 198:9].

Claims based on N.C. Gen. Stat. § 58-63-15 are governed by the four-year statute of limitations applicable to N.C. Gen. Stat. § 75-1.1. *Cleveland Const., Inc. v. Fireman's Fund Ins. Co.*, 819 F.Supp.2d 477, 484 (W.D.N.C. 2001). Like the claims for Breach of Contract, Beach Mart's Chapter 58 and 75 claims arose on or about January 15, 2013, but no later than March 2013. Because the Statute of Limitations on Beach Mart's Chapter 58 and 75 claims ran no later than March 2017, Beach Mart's counterclaims are untimely and should be dismissed.

**b.    Beach Mart's Breach of Contract Counterclaim Fails as a Matter of Law.**

Beach Mart has not presented sufficient evidence to demonstrate that Penn National breached provisions of the Policies it provided to Beach Mart. "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that

19

contract." *Poor v. Hill,* 138 N.C.App. 19, 26, 530 S.E.2d 838, 843 (2000).  There is no dispute that Penn National entered into valid contracts with Beach Mart.  However, there is no evidence that Penn National breached these contracts.

First, Penn National did not breach its duty to indemnify under the Policies because Penn National has no duty to indemnify based on the decision in the Underlying Action.  *See infra* § III.  Second, Beach Mart did not breach its duty to defend Beach Mart because it retained highly qualified counsel to defend Beach Mart within a reasonable time of tender.

      i.      <u>The time period between tender and hiring of defense counsel was not unreasonable.</u>

A six month delay, at most, in David Brown being involved as defense counsel is not unreasonable and is not a breach of Penn National's duty to defend.  It took Beach Mart over six months to determine coverage, when it should have immediately tendered the defense to Penn National in order to allow them to be involved from the case's inception and in accordance with both Policies requiring notification of a suit "as soon as practicable".  [DE-115 ¶ 10]  Beach Mart's own expert, Bryan Tilden, even opined that it would have been reasonable for Penn National to have determined whether it was going to defend Beach Mart before Thanksgiving 2012, which Penn National did by contacting David Brown to act as defense counsel.  [Tilden Dep., pp. 185:21-186:7] Further, Wendy Ray, Beach Mart's office manager in charge of all insurance policies, was not even aware of the time frame between when Beach Mart notified Penn National of the lawsuit and when David Brown was retained.  [Ray Dep., p. 50:12-18]  Finally, Beach Mart points to no evidence in the record that would allow the court to determine the reasonableness of this six month period. *See Meadlock v. Am. Fam. Life Assur. Co.,* 221 N.C. App. 669, 729 S.E.2d 127 (2012) (holding plaintiff failed to present evidence demonstrating that four month delay between plaintiff's claim and insurer's response was unreasonable).  As such, Beach Mart has failed to present evidence to

20

support its claim that the time it took to retain defense counsel was a breach of Penn National's duty to defend.

ii. David Brown was qualified to handle the underlying lawsuit.

Beach Mart has failed to demonstrate why David Brown should not have been retained to defend Beach Mart in the Underlying Action. Beach Mart's only discernable claim that Brown was unqualified to represent them in the Underlying Action was that Brown did not have prior trademark litigation experience. However, Beach Mart's mere conclusory allegation is unfounded, as Beach Mart's investigation in to Brown's qualifications were minimal. Wendy Ray admitted that she only looked at the website of David Brown's firm to determine his qualifications and, although she spoke with him one time, did not further question Brown regarding his expertise. [Ray Dep., pp. 60:8-68:8; Hicks Dep., p. 201:10-18] Additionally, Beach Mart's 30(b)(6) designees also only reviewed David Brown's website and performed a Google search to determine whether he was qualified to handle the Underlying Action. [Gray Dep., pp. 19-20, 122:6-18; Debaugh Dep. pp. 69:7-16] Most importantly, there is no evidence whatsoever that anyone at Beach Mart ever personally asked Brown about his trademark litigation experience during the over eight and a half years Brown acted as defense counsel for Beach Mart. [DE-115 ¶ 27]

Under the businessowners policy, and as admitted by Beach Mart's expert, Penn National has the exclusive right to select defense counsel. [Dep. Tilden Dep. 189:13-25]; *see e.g. Driggs Corp. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 3 F. Supp. 2d 657, 660 (D. Md. 1998), *aff'd,* 181 F.3d 87 (4th Cir. 1999) (holding firm retained by insurer was competent to handle matter even if it wasn't the "megafirm" requested by insureds).

Further, even if Beach Mart had the right to question Penn National's choice of counsel, it did not demonstrate that Mr. Brown was not qualified. In fact, Brown has

extensive experience litigating cases and trying cases to a jury verdict. [DE-115 ¶ 29] The retention of David Brown was not a breach of Penn National's duty to defend.

   **c.     Beach Mart's Counterclaim Allegations Fail to Adequately Plead a Claim for Bad Faith.**

The Answer and Counterclaim filed by Beach Mart [DE-44] uses the heading "Bad Faith" for the Third Counterclaim for Relief; however, the Third Counterclaim for Relief does not state a *prima facie* case for the tort of bad faith under North Carolina law, and instead appears to be a restatement of the Fourth Claim for Relief under N.C. Gen. Stat. §§ 58-63-15 (11) and 75-1.1 *et. seq.  See, e.g. Blis Day Spa, LLC v. The Hartford Insurance Group*, 427 F.Supp.2d 621 (W.D.N.C.).

In order to recover punitive damages for an insurance company's bad faith, the plaintiff must prove "(1) a refusal to pay after recognition of a valid claim, (2) bad faith, and (3) aggravating or outrageous conduct." *Lovell v. Nationwide Mutual Ins. Co.,* 108 N.C.App. 416, 420, 424 S.E.2d 181, 184, *aff'd in part, dismissed in part,* 334 N.C. 682, 435 S.E.2d 71 (1993).  Bad faith means "not based on honest disagreement or innocent mistake."  *Id.* at 396, 331 S.E.2d at 155 (citing *Newton v. Standard Fire Ins. Co.,* 291 N.C. 105, 229 S.E.2d 297 (1976)).  In other words, bad faith requires a "wrongful reason, purpose or motive for not paying" in order to show bad faith.  The third element, "aggravated conduct, may be shown by fraud, malice, gross negligence, insult, rudeness, oppression, or wanton and reckless disregard of plaintiff's rights." *Lovell* at 422, 424 S.E.2d at 185.

Beach Mart's bad faith counterclaim details multiple ways in which it believes Penn National acted in bad faith all arising from alleged violations of § 58-63-15(11).  Curiously, under Beach Mart's Unfair and Deceptive Acts claim, Beach Mart also lists these exact statute violations without further explanation.

Here, Penn National first sent a reservation of rights letter to Beach Mart informing them of a potential coverage issue on July 18, 2012, one month after the case was tendered to Beach Mart. [DE-115 ¶ 12] Penn National then sent a more detailed reservation of rights letter to Beach Mart on August 7, 2012 and another reservation of rights letter on January 15, 2013 informing Beach Mart that counsel had been retained for Beach Mart as of November 18, 2012. [DE-115 ¶ 13, 17] A final reservation of rights letter was sent to Beach Mart on March 14, 2013. [DE-115 ¶ 23] This communication with Beach Mart indicates that Penn National made clear that there may not be coverage for the underlying counterclaims and does not amount to bad faith.

Additionally, Beach Mart has failed to allege how Penn National acted with a wrongful purpose or motive. Penn National communicated with Beach Mart about the coverage investigation via multiple Reservation of Rights letters and correspondence between counsel for the parties. [DE-115 ¶ 11-13, 17, 23] In November 2012, Penn National engaged counsel to represent Beach Mart, roughly five months after Beach Mart tendered L&L's counterclaims. [DE-115 ¶ 14] "It is not bad faith to provide a defense while undertaking further review of coverage issues, nor is it bad faith to withdraw that defense when further review establishes a substantial argument against coverage." *Affinity Living Grp., LLC v. Starstone Specialty Ins. Co.*, No. 1:18-CV-35, 2020 WL 6976963, at *2 (M.D.N.C. Nov. 12, 2020). If anything, this is evidence that Penn National intended to do right by Beach Mart even when it believed that there might not be coverage. Beach Mart has also failed to plead any aggravated conduct on the part of Penn National in its counterclaims. As such, Beach Mart's bad faith counterclaim fails to meet the required elements, and should be dismissed.

### d. Beach Mart Cannot Forecast a Prima Facie Case of Unfair and Deceptive Trade Practices by Penn National.

Beach Mart has not alleged a *prima facie* case of unfair and deceptive trade practices by Penn National and has merely pled the provisions of article § 58-63-15(11) without further explanation.  To prevail on a claim for unfair and deceptive trade practices, a claimant must demonstrate the existence of three factors: "(1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business." *Miller v. Nationwide Mutual Ins. Co.,* 112 N.C.App. 295, 301, 435 S.E.2d 537, 542, *disc. review denied,* 335 N.C. 770, 442 S.E.2d 519 (1994); *Spartan Leasing v. Pollard,* 101 N.C.App. 450, 460, 400 S.E.2d 476, 482 (1991).

N.C. Gen. Stat. § 58-63-15(11) does not by itself include a private cause of action; however, a plaintiff can obtain relief for violations of this statute under N.C. Gen. Stat. § 75-1.1.  *First Protective Ins. Co. v. Rike*, 516 F. Supp. 3d 513, 532 (E.D.N.C. 2021).  Conduct that violates section 58-63-15(11) is an unfair and deceptive act or practice under the UDTPA because "such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." *Id.* at 532 (citing *Gray v. N.C. Ins. Underwriting Ass'n,* 352 N.C. 61, 71, 529 S.E.2d 676, 683 (2000)).

Beach Mart alleges that Penn National violated multiple provisions of N.C. Gen. Stat. § 58-63-15(11) and each of those provisions will be discussed in turn.  First, Beach Mart alleges that Penn National misrepresented pertinent facts or insurance policy provisions relating to coverages at issue.  However, neither Beach Mart's president nor its office manager who is in charge of Beach Mart's insurance agreements, Wendy Ray, is aware of any misrepresentations made by Penn National.  [Ray Dep., p. 114:20-25; Israel Golasa Deposition Transcript, pp. 33:11-34:1]   Beach Mart asserts under its Bad Faith claim that Penn National has misrepresented the insurance policy provisions by contending that the counterclaims do not constitute an "occurrence" in multiple reservation of rights letters. However, Penn National never directly addresses the applicability of "occurrence" in any of

24

its letters.  Penn National never told Beach Mart that its defense in the Underlying Action was covered and instead issued multiple reservation of rights letters indicating that there may be a coverage issue. [DE-115 ¶ 12, 13, 17, 23] This does not amount to a misrepresentation of facts or insurance policy provisions.

Second, Beach Mart claims that Penn National refused to pay claims without conducting a reasonable investigation based upon all available information.  "[D]enying a claim based on a reasonable but mistaken policy interpretation" is not an unfair and deceptive trade practice.  *Affinity Living Grp., LLC*, 2020 WL 6976963, at *3.  Beach Mart indicated one month after tender in its reservation of rights letter dated July 18, 2012 that it was investigating coverage in this matter. Although Penn National continued to investigate coverage, it retained counsel David Brown to defend Beach Mart and continued to defend Beach Mart up to the present even after filing this declaratory judgment action.  [DE-115 ¶14]

Third, Beach Mart claims Penn National failed to affirm or deny coverage of claims within a reasonable time after proof of loss statements had been completed.  It is not an "unfair trade practice to initially provide a defense subject to a reservation of rights and then withdraw that defense when further examination discloses a reasonable, even if ultimately mistaken, basis for denial."  *Affinity Living Grp., LLC*, 2020 WL 6976963, at *3. Penn National responded to Beach Mart's tender of the Underlying Action within a month by sending a reservation of rights letter in July of 2012. [DE-115 ¶14] Penn National decided to defend Beach Mart in the Underlying Action subject to a full and complete reservation of rights under the BOP and UL Policies on or about mid-November 2012. [DE-115 ¶ 14]  And Penn National continued to defend Beach Mart even after it denied coverage.  [DE-115 ¶14, 27] One month to send a reservation of rights and four months to contact defense counsel is

a reasonable amount of time, especially considering it took Beach Mart over six months to tender coverage to Penn National. [Gray Dep., pp. 79:11-80:18] [DE-115 ¶ 10]

Fourth, Beach Mart claims that Penn National did not attempt in good faith to effectuate prompt, fair, and reasonable settlements of claims in which liability has become reasonably clear. Penn National did not violate this provision, as liability was not clear in the Underlying Action until L&L was deemed liable by jury verdict. [DE-115 ¶ 31] Therefore, Penn National did not violate this provision if Beach Mart was never clearly liable. *See Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 398 (4th Cir. 2018) (concluding liability was not clear until judgment was entered in the underlying case).

Finally, Beach Mart claims that Penn National failed to promptly provide a reasonable explanation on the basis in the insurance policy in relation to the facts of applicable law for denial of a claim or for the offer of compromised settlement. However, the record demonstrates that Penn National sent two reservation of rights letters to Beach Mart within the first two months after tender detailing the facts as understood by Penn National, the applicable policy provisions that may not provide coverage, and the fact that Penn National was continuing to investigate coverage. [DE-115 ¶ 12, 13] Such communication constituted a reasonable explanation of Penn National's developing view of the Underlying Action. *See DENC, LLC v. Philadelphia Indem. Ins. Co.*, 426 F. Supp. 3d 151, 155 (M.D.N.C. 2019) (holding insurance company that provided one letter stating payments were being issued and a another letter denying coverage constituted a violation of 58-63-15(11)(n)).

Therefore, Beach Mart has failed to present evidence that Penn National acted in a manner that was unfair, unscrupulous, or immoral to Beach Mart and its unfair and deceptive acts claim should be dismissed.

**e. If Penn National is Found to Have Breached its Policies, Beach Mart's Damages are Limited to the Period Between June 2012 and January 15, 2013.**

Even if this Court decides that Penn National breached its policies with Beach Mart, any damages awarded to Beach Mart should be limited solely to the time period between tender of the case on June 6, 2012 and the time David Brown contacted Beach Mart on January 15, 2013. As argued above, this period of time has been the only period in which Beach Mart has sought reimbursement for attorney's fees for the defense of L&L's counterclaims in the Underlying Action.

## III. PENN NATIONAL DOES NOT HAVE A DUTY TO INDEMNIFY BEACH MART.

The jury verdict in the Underlying Action and the Underlying Judgment—if upheld—renders Penn National's duty to indemnify moot given that the jury decided all claims in favor of Beach Mart.

The duty to indemnify is the insurer's duty to pay damages incurred by events covered by a particular policy. *Waste Mgmt. of Carolinas, Inc.* at 691, 340 S.E.2d at 377. The verdict rendered by the jury in the Underlying Action and the Underlying Judgment, if not disturbed, renders the duty-to-indemnify issue in the present action moot. Under the *Waste Management* standard, the Court determines the duty to indemnify by the facts as proven at trial. 315 N.C. at 691, 340 S.E.2d at 377. At trial, the jury decided L&L's sole remaining claim in favor of Beach Mart and against L&L, and thus, Beach Mart owes no money to L&L. [DE-115 ¶ 31] The Court confirming the same in the Underlying Judgment. Therefore, the duty-to-indemnify issue became moot, inasmuch as there is not a judgment against Beach Mart for which Beach Mart would or could seek indemnification from Penn National.[2]

---

[2] *See* Tilden Dep., pp. 191:4-22 stating that as long as appeals do not occur in the underlying case, based on the outcome at trial, Beach mart does not owe any money to L&L Wings for indemnification.

## CONCLUSION

Based upon the foregoing, Penn National respectfully requests the Court enter summary judgment in its favor.

/s/ David L. Levy
NC State Bar No. 34060
Attorney for Plaintiff

## <u>CERTIFICATE OF SERVICE AND FILING</u>

I hereby certify that on October 15, 2021, I electronically filed the foregoing *Memorandum of Law in Support of Pennsylvania National Mutual Casualty Insurance Company's Motion for Summary Judgment* with the Clerk of Court using the CM/ECF system, which will send notification of filing to all counsel of record registered to receive service in this action.

This the 15TH day of October, 2021.

/s/ David L. Levy
NC State Bar No. 34060
Attorney for Plaintiff

Case 2:14-cv-00008-FL    Document 114    Filed 10/15/21    Page 29 of 29