IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:14-CV-08-FL

PENNSYLVANIA NATIONAL MUTUAL )
CASUALTY INSURANCE COMPANY, )
)
        Plaintiff, )
)
v. )            ORDER
)
BEACH MART, INC., )
)
        Defendant. )

This long-lived matter is before the court on plaintiff's motion for summary judgment and

defendant's motion for partial summary judgment. (DE 113, 116). For the following reasons, the

motions are granted in part and denied in part.

**STATEMENT OF THE CASE**

Plaintiff seeks in this action initiated February 4, 2014, declarations of non-coverage under

insurance policies issued to defendant. This coverage dispute stems from an underlying lawsuit

previously before this court, Beach Mart, Inc. v. L&L Wings, Inc., case no. 2:11-CV-44-FL, filed

by defendant Beach Mart, Inc. ("Beach Mart") against a competing beachwear retailer, L&L

Wings, Inc. ("L&L"). L&L asserted counterclaims in that action, and defendant requested a

defense and indemnification from plaintiff. In the instant case, plaintiff seeks declaration that

L&L's counterclaims do not fall within the insurance agreements and plaintiff therefore had no

obligation to provide a defense.[1]

---

[1]     Plaintiff also sought declaratory judgment that it had no duty to indemnify defendant; however, successful
defense in the underlying action of L&L's counterclaims up to and through trial, together with the entry of final

Before responsive pleadings in this matter became due, the court granted a consent motion to stay the case predicated on suspension of activities in the underlying action. The stay was lifted over three years later, on September 25, 2017, following which defendant filed answer and counterclaims. Plaintiff concurrently filed the operative amended complaint[2] again seeking a declaration of noncoverage under the policies, and defendant filed an amended answer and an amended counterclaim for declaration of coverage. Defendant additionally asserts amended counterclaims[3] for breach of the insurance policies for inadequate defense and claims of bad faith and unfair and deceptive practices stemming from plaintiff's handling of defendant's request for defense and indemnification under the policies.

On March 6, 2018, the court granted plaintiff's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and dismissed the case. The court's dismissal, based upon its determination that the insurance policies' prior publication exclusion barred coverage, was reversed on appeal in Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc., 932 F.3d 268 (4th Cir. 2019). The United States Court of Appeals for the Fourth Circuit did not reach any policy exclusion other than the prior publication exclusion in its opinion.

The case thereafter was remanded to the undersigned.[4] A lengthy and contentious period of discovery ensued, prolonged by party and counsel involvement in the underlying action and

---

judgment on March 29, 2021, and the post-judgment settlement including dismissal with prejudice of all rights by L&L to appeal, have extinguished any duty of plaintiff to indemnify defendant under the policies. That part of plaintiff's claim accordingly is mooted.

[2]    Hereinafter, all references to the "complaint" in the text, or "Compl." in citations, are to the operative amended complaint filed October 2, 2017.

[3]    Hereinafter, all references to defendant's "counterclaim" or "counterclaims" in the text are to the operative amended counterclaims filed October 16, 2017, unless otherwise specified.

[4]    This case originally was assigned to Senior United States District Judge James C. Fox, and then reassigned to United States District Judge Terrence W. Boyle on May 31, 2017, before being reassigned to the undersigned on August 28, 2019.

2

issues emanating therefrom, raised in at least two consent motions to revise and extend the discovery schedule and to further stay the case. Discovery delays then required cumulative extension of the dispositive motions deadline by almost a year, to October 15, 2021, on which date plaintiff filed its motion for judgment as a matter of law on its claim for declaratory judgment and dismissing defendant's counterclaims. Plaintiff relies in support of its motion upon: 1) the governing insurance policies; 2) defendant's responses to written discovery; 3) deposition testimony of Wendy Ray ("Ray"), defendant's corporate secretary; Israel Golasa ("I. Golasa" ), defendant's president; Byran Tilden ("Tilden"), serving as an expert for defendant; Crouse Gray ("Gray"), defendant's outside counsel; Art Debaugh ("Debaugh"), former counsel for defendant; Jack Hicks ("Hicks"), defendant's outside counsel; attorney David Brown ("Brown"), engaged by plaintiff to represent defendant in the underlying action; and Gregory Gross ("Gross"), claims specialist with plaintiff assigned to defendant's claims under the insurance policies; and 4) various filings in the underlying action.

Defendant's opposition makes reference to additional evidence including: 1) sworn testimony of Gary Gibson ("Gibson"), supervisor with plaintiff; Frank Benedek ("Benedek"), agent for plaintiff; and Adam Parsons ("Parsons"), in-house counsel for plaintiff; 2) plaintiff's call logs from October 2012 to January 2013 detailing communications between claims specialist Gross and defense counsel Brown; 3) correspondence from Ray to Gross dated February 4, 2013; and 4) plaintiff's litigation claims manual.

Defendant's motion for partial summary judgment is predicated on its first counterclaim for declaratory judgment and part of its fourth counterclaim for unfair and deceptive trade practices for reimbursement of certain defense costs. Defendant also moves for judgment on the amount of damages to be awarded on its counterclaim of reimbursement. Defendant relies in support of its

upon: 1) a form dated June 8, 2012, noticing plaintiff of defendant's alleged advertising injury loss in the underlying action; 2) correspondence from plaintiff to defendant professing to reserve all rights under the insurance policies; 3) insurance claim files by plaintiff detailing investigations by plaintiff into coverage and defendant's reimbursement claim; 4) email transmittals between representatives of plaintiff and defendant covering the time period between tender of the underlying claims and notice of representation by Brown; 5) a coverage question report completed by Gross; 6) storefront photos produced by L&L in the underlying action; 7) summary of defendant's attorneys' fees from June 8, 2012, to January 15, 2013, the dates for which defendant presently seeks reimbursement; and 8) sworn testimony of Steve Oliver ("Oliver"), corporate designee of plaintiff, Parsons, Monty Ross ("Ross"), plaintiff's agent who sold defendant the insurance policies; Benedek; and Maeyan Golasa ("M. Golasa").

## STATEMENT OF FACTS

In 2007, for coverage effective as of January 1, 2008, and as thereafter renewed through December 31, 2011, plaintiff sold eight commercial insurance policies to defendant. (Pl.'s Opp. Stmt. (DE 121) ¶ 6).[5] Four of those policies are business owner's liability policies, and four are commercial umbrella liability policies. (Id. ¶¶ 8-9).

The business owner's liability policies create a right and duty to defend the insured, defendant Beach Mart, against any suit seeking damages caused by "advertising injury," inclusive of injury arising out of "misappropriation of advertising ideas or style of doing business" or "infringement of copyright, title, or slogan." (Id. ¶¶ 10-11). The policies exclude, however,

---

[5]     Where a fact asserted in the movants' statement of material facts is undisputed, the court cites to the opposing parties' responsive statement of facts, where it indicates the fact is admitted, undisputed, or without opposing fact.

4

advertising injury arising out of "[b]reach of contract, other than misappropriation of advertising ideas under an implied contract." (Id. ¶ 12).

The umbrella liability policies also create a right and duty to defend the insured against any suit seeking damages for "personal and advertising injury" when the underlying insurance policy does not provide coverage, or its limits are otherwise exhausted. (Id. ¶ 13). The umbrella liability policies define "personal and advertising injury" to include injury arising out of "the use of another['s] advertising idea in [the insured's] advertisement" as well as "infringing upon another's copyright, trade dress, or slogan in [] advertisement." (Id.). The umbrella liability policies however exclude coverage for personal and advertising injury "[a]rising out of a breach of contract, except an implied contract to use another's advertising idea in [the insured's] advertisement." (Id. ¶ 14). Together, the collective liability limits for occurrences of advertising injury covered under the policies is $8,000,000.00. (Id. ¶ 17).

Defendant Beach Mart filed the underlying action against L&L in this court on September 9, 2011, concerning the use of the names "WINGS," "SUPER WINGS," and "BIG WINGS." (Def.'s Opp. Stmt. (DE 126) ¶ 8). Defendant Beach Mart asserted two claims against L&L for breach of contract and declaratory judgment, with both claims arising out of a 2005 contractual agreement between the parties. (Id.). On November 22, 2011, L&L answered and counterclaimed for breach of contract, violation of an implied covenant of good faith and fair dealing, two separate violations of the Lanham Act, for both trademark infringement under 15 U.S.C. § 1114 and false designation of origin under 15 U.S.C. § 1125(a), unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1, and unfair competition under North Carolina common law. (Pl.'s Opp. Stmt. (DE 121) ¶ 18). L&L's trade infringement claims were dismissed by October 3, 2014, order granting defendant's motion for discovery sanctions, and L&L additionally was precluded from

5

asserting trademark infringement and unfair competition claims against defendant. (Id. ¶ 29). L&L filed amended counterclaims on February 23, 2017, seeking declaratory relief and asserting claims for breach of contract and of the implied covenant of good faith and fair dealing. (Id.).

Defendant tendered to plaintiff L&L's original counterclaims, seeking defense against them, by June 8, 2012. (Def.'s Opp. Stmt. (DE 126) ¶ 10). Plaintiff issued correspondence to defendant dated July 18, 2012, styled as a reservation of rights letter, confirming receipt of L&L's original counterclaims and providing that it was investigating the matter. (Id. ¶ 12). Plaintiff sent largely identical correspondence August 7, 2012, indicating that the investigation was ongoing, and excerpting several pages worth of provisions in the policies, including exclusions. (Id. ¶ 13).

Plaintiff elected to defend defendant Beach Mart in the underlying action subject to a full reservation of rights under the insurance policies and engaged attorney Brown for that purpose in November and December 2012. (Id. ¶¶ 14-15). Between the time of tender of L&L's underlying counterclaims on June 8, 2012, and Brown's engagement in the action, defendant Beach Mart retained independent counsel and underwent significant discovery and trial preparations. (Pl.'s Opp. Stmt. (DE 121) ¶ 60). Brown communicated with defendant's retained counsel in January 2013, and plaintiff additionally sent defendant formal notice of its decision to retain Brown, dated January 15, 2013, again styled as a reservation of rights letter. (Id. ¶¶ 16-17). This letter mirrored those earlier sent by plaintiff, but added two paragraphs pertaining to defense counsel, Brown, provisionally provided. (Id. ¶ 17). Plaintiff sent a fourth letter March 14, 2013, confirming that plaintiff would retain Brown and would not retain the outside counsel already involved in the case. (Def.'s Opp. Stmt. (DE 126) ¶ 25).

On December 1, 2014, through its counsel, defendant submitted for reimbursement by plaintiff $470,000.00 of its previously-incurred post-tender defense costs, relating to defense

between June 8, 2012, when the original underlying claims were first tendered to plaintiff for defense, and January 15, 2013, when defendant Beach Mart received official notice by letter of plaintiff's retention of Brown. (Pl.'s Opp. Stmt. (DE 121) ¶ 57). Beyond confirmation and substantiation of the beginning and ending dates for the time period comprising defendant's reimbursement claim, to which defendant promptly responded, there was no correspondence from plaintiff regarding the claim in 2015 or 2016. (Id. ¶ 67).

On or around July 27, 2017, plaintiff communicated through its counsel an oral counter-offer of $50,000.00.[6] (Id. ¶ 71). According to defendant, this counteroffer was contingent on defendant fully releasing plaintiff from obligations under the policies. (Id.). Defendant requested in February 2020 for plaintiff to make an unconditional payment in satisfaction of its claim for reimbursement, to which plaintiff responded with a conditional counteroffer of payment contingent upon defendant executing a release of all claims relating in any way or manner to the duty to defend against L&L's counterclaims in the underlying action and its filing of a stipulation of dismissal of the pending coverage case. (Pl.'s Opp. Stmt. (DE 121) ¶¶ 72-73). Plaintiff still has not reimbursed defendant for its post-tender legal expenses. (Id. ¶ 74).

**COURT'S DISCUSSION**

A. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court "consider[s] each motion separately on its own merits to determine whether [any] of the parties deserves judgment as a

---

[6] Plaintiff objects to admission of evidence of settlement negotiations under Federal Rule of Evidence 408. As the settlement offers are not relied upon here to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," plaintiff's objections are overruled. Fed. R. Evid. 408.

7

matter of law." <u>Defs. of Wildlife v. N.C. Dep't of Transp.</u>, 762 F.3d 374, 392 (4th Cir. 2014).[7] The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Id.</u> at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." <u>Id.</u> at 255; <u>see</u> <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the

---

[7] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace

v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law

is warranted where "the verdict in favor of the non-moving party would necessarily be based on

speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir.

2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable

inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at

489-90.

B.      Analysis

    1.      Claims for Declaration of Coverage or Noncoverage

        a.      Principles of Interpretation

Both parties seek declaration of whether plaintiff was obligated under its policies to defend

defendant Beach Mart against the underlying original and amended counterclaims by L&L.

"Pursuant to North Carolina law, the interpretation of an insurance policy is a question of

law" for the court.[8] State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am., 343 F.3d

249, 254 (4th Cir. 2003); Accardi v. Hartford Underwriters Ins. Co., 373 N.C. 292, 295 (2020).

Specifically, it is a question of contract law. Gaston Cty. Dyeing Mach. Co. v. Northfield Ins. Co.,

351 N.C. 293, 299 (2000). "As with all contracts, the object of construing an insurance policy is

to arrive at the insurance coverage intended by the parties when the policy was issued."

Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 364 N.C. 1, 9 (2010). "When the

policy language is clear and unambiguous, a court is required to enforce the policy as written."

Cont'l Cas. Co. v. Amerisure Ins. Co., 886 F.3d 366, 371 (4th Cir. 2018). "Terms defined in

---

[8]    The parties do not dispute North Carolina law applies here. Further, North Carolina choice of law is applicable, see Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, (1941), and guides application of North Carolina substantive law, Fortune Ins. Co. v. Owens, 351 N.C. 424, 428 (2000), and North Carolina statutory law, N.C. Gen. Stat. § 58-3-1.

insurance policies are applied to all clauses of the insurance contract, while undefined terms are construed in accordance with their ordinary meaning." Id.

However, "ambiguities in the terms of an insurance policy must be construed against the insurer and in favor of coverage." N.C. Farm Bureau Mut. Ins. Co., Inc. v. Martin ex rel. Martin, 376 N.C. 280, 286 (2020) (explaining that "this rule of construction is only triggered when a provision in an insurance agreement is ambiguous"). Accordingly, "[w]hen the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved . . . in favor of coverage." Cont'l Cas., 886 F.3d at 371.

The scope of coverage under an insurance policy may encompass both a "duty to defend" and a "duty to indemnify." Harleysville, 364 N.C. at 7. "In determining whether an insurer has a duty to defend, the facts as alleged in the complaint are to be taken as true and compared to the language of the insurance policy." Id. "If the insurance policy provides coverage for the facts as alleged, then the insurer has a duty to defend." Id. As the comparison is made with reference to the facts alleged, the label of a claim is not determinative. Id.

"[P]leadings that disclose a mere possibility that the insured is liable (and that the potential liability is covered) suffice to impose a duty to defend upon the insurer." Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 691 n.2 (1986). Indeed, "the duty to defend is not dismissed because the facts alleged in a third-party complaint appear to be outside coverage, or within a policy exception to coverage." Id. at 691. Rather, the duty to defend is additionally triggered "[w]here the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy." Id. "[T]he insurer's refusal to defend is at his own peril: if the evidence subsequently presented at trial reveals that the events are covered, the insurer will be responsible

10

for the cost of the defense." Id. Further, "allegations of facts that describe a hybrid of covered and excluded events . . . suffice to impose a duty to defend upon the insured." Id. at 691 n.2.

"Under North Carolina law, if an insurer improperly refuses to defend a claim, it is estopped from denying coverage . . . even if it made an honest mistake in its denial." In re Abrams & Abrams, P.A., 605 F.3d 238, 241 (4th Cir. 2010). By contrast, the insurer will not be so estopped if it defends under a "full reservation of its right to deny coverage," or if it gives timely notice to its insured of "reservation of all of its rights and defenses" of noncoverage under a policy. Shearin v. Globe Indem. Co., 267 N.C. 505, 509 (1966); Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co., 266 N.C. 430, 435 (1966).

### b. Interpreting the Policies in Question

Each of plaintiff's policies issued to defendant impose a duty to defend for "advertising injury" or "personal and advertising injury," defined to include infringement on "trade dress" or "slogan." (See, e.g., BL Policy 2008 (DE 40-1) at 45, 55; UL Policy 2008 (DE 40-5) at 27, 38). L&L's underlying counterclaims, which allege in part infringement upon L&L's trade dress and slogan, fall comfortably within those definitions. (See L&L Original Counterclaims (DE 40-10) at 10-13; L&L Amended Counterclaims (DE 40-12) at 14-15, 17).

Central to the parties' dispute, however, are exclusions for advertising injury "arising out of . . . [b]reach of contract, other than misappropriation of advertising ideas under an implied contract," (BL Policy 2008 (DE 40-1) at 51), or otherwise "arising out of a breach of contract, except an implied contract to use another's advertising idea in your advertisement," (UL Policy 2008 (DE 40-5) at 27).

The policies do not define what it means to "aris[e] out of" a contract breach. Considering, then, the phrase's ordinary meaning, Cont'l Cas. Co., 886 F.3d at 371, an injury arises out of a

11

breach of contract when it "spring[s] up from" or "originate[s]" in the contract.  Danby of N. Am.,
Inc. v. Travelers Ins. Co., 25 F. App'x 186, 194 (4th Cir. 2002) (relying upon Black's Law
Dictionary to determine the ordinary meaning of "arise out of" under North Carolina law).  It
follows from that definition that an injury does not arise out of a contract when the underlying
actions are alleged to be unlawful independent of any contractual relationship between the parties.
Thus, if claims for injury rely upon a legal source other than contract law, they do not arise out of
a breach of contract and are not subject to the breach of contract exclusion under the policies.  See,
e.g., Looney Ricks Kiss Architects, Inc. v. State Farm Fire & Cas. Co., 677 F.3d 250, 257 (5th Cir.
2012) ("[A] claim for relief cannot be considered to have 'arisen out of' a breach of contract where
the legal support for the claim emanates from a source other than contract law.").

    c.  Application of the Policies to L&L's Counterclaims in the Underlying
       Action

   Determination of the duty to defend in this case thus turns on whether L&L's counterclaims
in the underlying suit rely upon sources other than contract law.  The court considers L&L's
original and amended counterclaims in turn below.

       i.  L&L's Original Counterclaims

   Turning first to L&L's original counterclaims, filed November 22, 2011, L&L asserted
claims for breach of a 2005 agreement based upon defendant Beach Mart's use of the "WINGS"
trademark, trademark infringement and false designation of origin in violation of the Lanham Act,
15 U.S.C. §§ 1114, 1125(a), and unfair competition in violation of North Carolina statutory law,
N.C. Gen. Stat. § 75-1.1, and North Carolina common law.  (See L&L Original Counterclaims
(DE 40-10) at 6).  Though L&L's claim for breach of the 2005 agreement plainly arises out of a
contract, its claims for trademark infringement, false designation of origin, and unfair competition
do not.  Rather, these latter claims exist with legal support beyond the duties imposed by the 2005

agreement, including federal and state statutory law. They are not subject to the policies' breach of contract exclusion, and plaintiff's duty to defend defendant against all the counterclaims was accordingly triggered upon their tender. See Waste Mgmt. of Carolinas, Inc., 315 N.C. at 691 n.2 (duty to defend triggered by hybrid claims).

Plaintiff's arguments to the contrary are unavailing. Plaintiff argues that the facts as alleged in L&L's counterclaims all arise solely out of defendant's breach of the 2005 agreement, as exemplified by L&L's inclusion of all defendant's alleged wrongs under the heading "Beach Mart's Breach Of The 2005 Agreement." It is well settled, however, that the same acts or omissions may constitute breaches of general duties as well as contractual duties and may give rise to both actions in tort and actions in contract. Newton v. Standard Fire Ins. Co., 291 N.C. 105, 229 (1976). Likewise, the same acts or omissions that violate contractual duties may also violate statutory law. The facts supporting plaintiff's alternative claims need not be distinct from those supporting a breach of contract, but rather the claims themselves must arise from an alleged violation other than violation of a duty imposed by contract. Here, L&L alleges such separate and distinct claims.

Danby, upon which plaintiff relies in support, does not reason otherwise. There, the court held that an insurance company did not have a duty to defend the plaintiff in an underlying action as all allegations in the underlying complaint supported a claim for an unjust termination of an agreement and were accordingly subject to the breach of contract exclusion. Danby, 25 Fed. App'x at 192-93. In opposition, the insured cited allegations by the nonparty complainant that the insured had breached the agreement by disparaging it to potential customers, which contentions the insured argued did not arise out of the contract. Id. at 193. In rejecting the insured's argument, the court determined that the allegations of disparagement were made only as justification for the nonparty

13

complainant's failure to perform under the agreement, and were not used to support alternative, non-contract claims. Id. ("Although [the nonparty complainant] asserted that [the insured] had advised potential customers that the Danby System was inappropriate for small diameter pipe, it did so as a justification for its failure to perform under the Agreement."). By comparison, L&L's additional counterclaims resemble those in Builders Mut. Ins. Co. v. Allora, LLC, No. 4:11-CV-210-H, 2013 WL 12250811 (E.D.N.C. Aug. 13, 2013), also relied upon by plaintiff, as they are "founded upon principles of [trademark] law, [and] exist[] independently of its [2005] agreement with [defendant Beach Mart]. In fact, its claim[s] would exist even absent the [2005] agreement. Coverage is therefore not excluded by the [b]reach of [c]ontract exclusion." Id. at *5.

ii.     L&L's Amended Counterclaims

As a discovery sanction, L&L's counterclaims for trademark infringement were dismissed on October 3, 2014. (Order (DE 117) at 34). L&L additionally was precluded from asserting unfair competition claims against defendant. (Id.). With those counterclaims removed, all remaining original counterclaims pertained to defendant's alleged breach of contract. (See L&L Original Counterclaims (DE 40-10)). On February 23, 2017, L&L filed amended counterclaims for breach of the 2005 agreement, breach of the implied covenant of good faith and fair dealing "aris[ing] out of the 2005 [a]greement," as well as a claim for declaration of construction of the 2005 agreement. (L&L Amended Counterclaims (DE 40-12) at 24). In effect, L&L's amended counterclaims each allege breach of the 2005 agreement and are accordingly excluded by the insurance policies' breach of contract exclusions.

Plaintiff's duty to defend defendant in the underlying action thus terminated upon the October 3, 2014, dismissal order, and the duty was not reinvigorated by L&L's filing of its amended counterclaims. See, e.g., Restatement of the L. of Liab. Ins. § 18 cmt. e (Am. L. Inst.

14

2019) ("If the component of the action that triggered the duty to defend is dismissed with prejudice, the insurer's duty to defend is terminated.").

Defendant argues that plaintiff nonetheless has a duty to defend defendant against the amended counterclaims because of waiver. According to defendant, each of plaintiffs' four reservation of rights letters were untimely and did not fairly inform defendant of plaintiff's coverage position, particularly by explaining application of the breach of contract exclusion upon which plaintiff now relies. Instead, the letters include generic statements of potential noncoverage coupled with excerpts of various parts of the insurance policies, furnished through a cut-and-paste method. (See generally Reservation of Rights Letter 7-18-2012 (DE 123-5); Reservation of Rights Letter 8-7-2012 (DE 123-6); Reservation of Rights Letter 1-15-2013 (DE 123-7); Reservation of Rights Letter 3-14-2013 (DE 123-8)). On this basis, defendant argues that plaintiff failed properly to preserve its coverage defenses, and those rights consequently are waived.

Defendant does not refer to North Carolina law in support of its argument. It is well-settled in North Carolina, however, that "doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms." Hunter v. Jefferson Standard Life Ins. Co., 241 N.C. 593, 595 (1955). Though exception to that general rule may exist where the insurer defends an insured without any reservation of rights, see, e.g., Early v. Farm Bureau Mut. Auto. Ins. Co., 224 N.C. 172, 174 (1944), North Carolina courts have not required a reservation of rights to include particular explanation of the insurer's theory of noncoverage or that they be made at a specific time. See, e.g., Shearin, 267 N.C. at 509; Jamestown, 266 N.C. at 435; Fortune Ins. Co. v. Owens, 132 N.C. App. 489, 494 (1999) (holding that insured had "full knowledge that [the insurer] contested coverage" even though "[t]here is no reservation of rights letter in the record," and noting that "filing of a

15

declaratory judgment action to clarify coverage issues has the same effect as . . . a reservation of rights").

Here, plaintiff's reservation of rights letters assert a clear, unequivocal reservation of rights, which provided defendant with full knowledge that plaintiff contested coverage. Indeed, all four letters expressly provide: "Please be advised that this is not a denial of coverage, but rather to inform Beach Mart, Inc. of a potential coverage issue." (See, e.g., Reservation of Rights Letter 7-18-2012 (DE 123-5) at 3). As to timing, plaintiff sent the first reservation of rights letter one month after tender of the underlying counterclaims, and a third reservation of rights letter the month defendant received notice that plaintiff would defend it against L&L's underlying counterclaims. (See generally id.; Reservation of Rights Letter 1-15-2013 (DE 123-7)). The letters therefore cannot reasonably be considered untimely. Accordingly, plaintiff is not now estopped from disputing coverage.

Defendant's arguments to the contrary rely upon case law from outside of North Carolina. See, e.g., Harleysville Grp. Ins. v. Heritage Communities, Inc., 420 S.C. 321, 336 (2017) (holding that a reservation of rights letter that "merely provides the insured with a copy of the policy, coupled with a general statement that the insurer reserves all of its rights" is insufficient to properly reserve the right to contest coverage); Advantage Bldgs. & Exteriors, Inc. v. Mid-Continent Cas. Co., 449 S.W.3d 16, 22-23 (Mo. Ct. App. 2014); Hoover v. Maxum Indem. Co., 291 Ga. 402, 406, 730 S.E.2d 413, 417 (2012). Where those cases apply terms and conditions governing reservations of rights that are different from the law as announced by the North Carolina Supreme Court, the court does not incorporate those terms and conditions into North Carolina law as a matter of first impression. See Brendle v. Gen. Tire & Rubber Co., 505 F.2d 243, 245 (4th Cir. 1974) ("A federal

court, sitting in North Carolina in a diversity case, must apply the law as announced by the highest court of that state or, if the law is unclear, as it appears the highest court of that state would rule.").

In the alternative to waiver, defendant argues L&L's amended claim for breach of the implied covenant of good faith and fair dealing is excepted from the breach of contract exclusion as it alleges "misappropriation of advertising ideas under an implied contract." (BL Policy 2008 (DE 40-1) at 51) (excluding coverage for advertising injury "arising out of . . . [b]reach of contract, other than misappropriation of advertising ideas under an implied contract" (emphasis added)); UL Policy 2008 (DE 40-5) at 27 (excluding personal and advertising injury "arising out of a breach of contract, except an implied contract to use another's advertising idea in your advertisement" (emphasis added))). L&L's claim is not made under an implied contract, however, but is instead made pursuant to the express 2005 agreement between L&L and defendant. (See, e.g., L&L amended counterclaims (DE 40-12) at 24 ("These wrongful actions of Beach Mart constitute a breach of the covenant of good faith and fair dealing that arises out of the 2005 Agreement." (emphasis added))). Clearly, then, L&L's amended claim does not fall under the implied contract exception to the breach of contract exclusion.

Finally, defendant argues L&L's amended counterclaims are not excluded as the breach of contract exclusion does not apply to copyright claims, trade dress claims, or slogan claims for infringement used in advertisements. The exception referenced by defendant, however, is not applicable to the breach of contract exclusion, but, rather, is included under an entirely different exclusion in the policy. (See BL Policy 2008 (DE 40-1) at 90; UL Policy 2008 (DE 40-5) at 27-28).

In the business owner's liability policies, the breach of contract exclusion is listed in subparagraph (1) under paragraph (q), but the exception cited by defendant is included only under

subparagraph (6), and is only applicable to the exclusion provided therein, for advertising injury "arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights." (BL Policy 2008 (DE 40-1) at 90). The same is true under the umbrella policies. (UL Policy 2008 (DE 40-5) at 27-28).

In sum, plaintiff's duty to defend defendant, triggered by L&L's original counterclaims, does not apply to defense of L&L's amended counterclaims, as they fall under the breach of contract exclusion of the governing policies. Plaintiff's motion for declaratory judgment of no coverage under the policies is denied as to L&L's original counterclaims but granted as to L&L's amended counterclaims. Likewise, defendant's motion for declaratory judgment of coverage under the policies is granted as to L&L's original counterclaims but denied as to L&L's amended counterclaims.

2.      Defendant's Counterclaims

a.      Whether Defendant's Counterclaims are Time-Barred

Plaintiff contends that defendant's counterclaims, first filed October 3, 2017, are time barred under North Carolina law. Defendant does not dispute that its counterclaims would be time-barred if their filing date is operative, but argues that because its counterclaims are compulsory, under federal law they relate back to plaintiff's filing of its complaint February 4, 2014. Plaintiff asserts that North Carolina law instead controls, and under North Carolina law compulsory counterclaims do not relate back.

Neither North Carolina Rule of Civil Procedure 13(a) nor Federal Rule of Civil Procedure 13(a), both of which govern compulsory counterclaims, include mention of relation back. The North Carolina Court of Appeals has interpreted absence of express statutory authorization to relate back in Rule 13(a) to mean that counterclaims do not relate back to the date a plaintiff's

18

action was filed. Pharmaresearch Corp. v. Mash, 163 N.C. App. 419, 427 (2004). By comparison, acknowledging the similar absence of express authority to relate back in the federal rule, the United States Court of Appeals for the Fourth Circuit has held that compulsory counterclaims relate back to the filing of the plaintiff's complaint. See Burlington Indus. v. Milliken & Co., 690 F.2d 380, 389 (4th Cir.1982) ("[T]he institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim[.]").

When a situation is covered by one of the Federal Rules of Civil Procedure, courts are to apply the Federal Rule unless it transgresses either the terms of the Rules Enabling Act, 28 U.S.C. § 2072, or constitutional restrictions. Hanna v. Plumer, 380 U.S. 460, 471 (1965). "The first question must therefore be whether the scope of the Federal Rule in fact is sufficiently broad to control the issue before the [c]ourt." Walker v. Armco Steel Corp., 446 U.S. 740, 749-50 (1980). If the situation is not covered by the Federal Rules, "the general rule [is] that a federal court is to apply state substantive law and federal procedural law in diversity cases." Hottle v. Beech Aircraft Corp., 47 F.3d 106, 109 (4th Cir. 1995). Thus, it falls to the court to determine whether the state rule in question is substantive or procedural, an inquiry that is functional in nature based on the "twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." Hanna, 380 U.S. at 468.

Federal Rules are to be "given their plain meaning" in determining whether they control the issue at hand. Walker, 446 U.S. at 749-50. Though the Fourth Circuit held in Burlington that the institution of an action tolls the running of the limitation period on compulsory counterclaims under Federal Rule of Civil Procedure 13(a), that holding was made in relation to federal claims and was based on what the court determined to be "the better view" rather than being required by

19

the rule itself. 690 F.2d at 389. Given the absence of a relation-back provision in the text of Rule 13(a), the court determines it is not broad enough to control the issue before the court by its terms.

Proceeding, then, to "the typical, relatively unguided Erie choice," Hanna, 380 U.S. at 471, the court finds Davis v. Piper Aircraft Corp., 615 F.2d 606 (4th Cir. 1980) instructive. There, plaintiff sought leave to amend his complaint to allege his capacity as ancillary administrator by North Carolina appointment made after the statute of limitations had run. Id. at 608. Plaintiff argued Federal Rule of Civil Procedure 15(a), (c) controlled rather than a contrary state rule which would, categorically, prohibit the allowance of amendments changing a plaintiff's capacity when the result would be to cure by relation back a lack of capacity that existed when an applicable statute of limitations had run. Id. at 609.

The court held that Rule 15(c), which, unlike Rule 13(a), expressly provides for relation back of amendment to a pleading, was sufficiently broad in scope to cover the ground occupied by the state rule, and thus had to be applied. Id. at 610-11. The court additionally reasoned, however, that the result would be the same under the Erie analysis, and its twin aims of discouraging forum shopping and avoiding inequitable administration of the laws:

> Here, application of the federal rule could not encourage forum shopping, since at the time of forum choice the need for invocation of a relation back rule of pleading is simply not in the picture for a claimant. Similarly, a balancing of federal interests in uniformity of application of procedural rules and in the maintenance of a coherent approach to related procedural matters such as the standards for stating claims sufficiently outweighs any discernible state interest in effectively preventing curative appointment of a personal representative after the timely commencement of judicial proceedings.

Id. at 612. Here, too, relation back of defendant's counterclaims does not encourage forum shopping, as it is no more likely to figure into plaintiff's choice of forum than the relation back of amendment to its complaint. Similarly, the federal interests favoring uniformity in pleading weigh in favor of following the federal rule. See Welch v. Louisiana Power & Light Co., 466 F.2d 1344,

20

1346 (5th Cir. 1972) ("[A]pplication of state rules as to relation back would disrupt important federal policies favoring simplification and uniformity of pleading." ).

The court accordingly finds federal law controls, under which defendant's counterclaims, all compulsory, relate back to plaintiff's filing of its complaint. With a consequent date of February 4, 2014, they are not time barred.

In the alternative, assuming North Carolina law governs, equitable tolling properly here serves to extend the applicable statutes of limitations. Though North Carolina has no controlling decision addressing equitable tolling, the Fourth Circuit has predicted that North Carolina's courts would apply equitable tolling where the plaintiff received timely notice of the defendant's counterclaims, there was no resulting prejudice, and the defendant acted with diligence. Aikens v. Ingram, 524 F. App'x 873, 880 (4th Cir. 2013).

Before responsive pleadings in this matter became due, and before any applicable statute of limitations had run on defendants' counterclaims,[9] the court granted a consent motion and stayed the case May 5, 2014. The stay was premised upon the indefinite suspension of all activity in the underlying action pending resolution of another related action filed by L&L in New York. That stay was not lifted until three years later, on September 25, 2017, following which time defendant timely filed its counterclaims and amended counterclaims. Defendant bore no fault for the delay as, though it consented to the stay, the stay was prompted by L&L's actions. Defendant, together with plaintiff, reasonably concluded that it was economical for the parties and the court to suspend activity until the underlying action resumed, given that coverage issues attendant in the present action arise solely in the context of the underlying action.

---

[9]  According to plaintiff, the statute of limitations ran for defendant's breach of contract claim in March 2016 and it ran for its bad faith and unfair and deceptive trade practices claims in March 2017.

21

There is no indication in the record that plaintiff failed timely to receive notice of the counterclaims or of resulting prejudice, and the court finds defendant acted diligently in asserting its counterclaims seven days after the stay was lifted. Accordingly, it is appropriate to invoke the doctrine of equitable tolling.

In arguing to the contrary, plaintiff disputes that defendant acted diligently, with reliance upon Staffing Advantage LLC v. Definitive Staffing Sols., Inc., No. 7:20-CV-00150-M, 2021 WL 2426340 (E.D.N.C. June 14, 2021). Staffing Advantage, however, is readily distinguishable. There, the defendant had earlier brought litigation against the plaintiff, and, despite knowing the same facts at the time of the original filing, defendant did not raise the challenged counterclaims until a later lawsuit, after expiration of the statute of limitations. Id. at *8. Further, the first litigation ended in a settlement agreement with carveouts for future litigation but silent as to the tolling of any statutes of limitations. Id. at *7. That the parties expressly agreed to reserve rights regarding party claims but did not agree to toll the limitations period applicable thereto made the court hesitant to employ equity to imply such a term. Id. By comparison, here there is no such earlier lawsuit between these parties, and though they agreed to stay the case for an indefinite period, that agreement does not evince a settlement as to the disposition of future claims. Thus, unlike in Staffing Advantage, applying equity does not "supply terms . . . to which the parties never agreed." Id. Finally, while the defendant there waited nearly a year after settlement to bring its claim, defendant here asserted its counterclaims seven days after the stay was lifted.

In sum, federal law controls, and defendant's counterclaims relate back to plaintiff's filing of its complaint, and thus are not time barred. In the alternative, under North Carolina law, equitable considerations justify that the applicable statutes of limitations be tolled. The court accordingly considers defendant's counterclaims on the merits.

b. Breach of Contract

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of the contract." Wells Fargo Ins. Servs. USA, Inc. v. Link, 372 N.C. 260, 276 (2019). Where an insurance policy creates a duty to defend the insured, the insurer's breach of that duty justifies the insured in defending against the suit and seeking recovery of costs and expenses from the insurer. See Lowe v. Fid. & Cas. Co. of N. Y., 170 N.C. 445, 87 S.E. 250, 252 (1915).

There is no dispute that the parties entered into valid contracts in the form of insurance policies. Pursuant to the forgoing analysis, this court also has determined that under those policies, plaintiff had a duty to defend defendant against L&L's original counterclaims, a duty which defendant in its counterclaims alleges plaintiff breached. Plaintiff argues there is no evidence of such breach. In response, defendant contends plaintiff breached its duty in three respects: by 1) refusing to honor defendant's retention of independent counsel and moving forward instead with Brown; 2) enabling a seven-month delay in its decision to hire counsel and defend defendant; and 3) selecting counsel not competent to defend against L&L's underlying counterclaims.

i. Rejection of Defense Offered Under a Reservation of Rights

Defendant argues that under National Mortgage Corp. v. American Title Insurance Co., 41 N.C. App. 613, 623 (1980), policyholders are entitled to reject the insurer's defense when offered under a reservation of rights. Accordingly, when plaintiff agreed to defend defendant against the counterclaims in the underlying action under a reservation of rights, following National Mortgage defendant had a right to reject the defense and seek instead reimbursement from plaintiff for defendant's preferred, and already retained, counsel. Plaintiff thus breached the policies when it insisted upon representation by Brown. As an initial matter, National Mortgage was reversed by

23

the North Carolina Supreme Court. 299 N.C. 369 (1980). In addition, <u>National Mortgage</u> is distinguishable as the insured in that case contended that such defense under a reservation of rights created a conflict of interest, an argument not made here. <u>Id.</u> at 621. It also represents a minority view, pursuant to which an insurer effectively forfeits the right to control the defense whenever it provides notice to the insured of a potential ground for contesting coverage. <u>See</u> Restatement of the L. of Liab. Ins. § 15 cmt. e (Am. L. Inst. 2019) ("Only a minority of jurisdictions allow insureds to reject a defense under a reservation of rights.").

In any event, the plain language of the policy here controls. None of the policies expressly grant the insured the authority to deny a defense offered under a reservation of rights. Instead, they grant plaintiff, the insurer, "the right . . . to defend the insured" against suits seeking covered damages, without qualification. (<u>See</u> BL Policy 2008 (DE 40-1) at 45; UL Policy 2008 (DE 40-5) at 27). Accordingly, under the unambiguous language of the policy, plaintiff had the right to control the defense against L&L's counterclaims, even contingent on its reservation of rights, unless it otherwise breached the policies. Therefore, there is no genuine issue that plaintiff breached the agreement on this basis.

ii.       Breach Based Upon Delay

Defendant additionally contends plaintiff breached its duty to defend by belaboring its decision to defend. First, an insurer cannot be said to have met its "duty to defend the insured against a[] suit," as required by the policies, if it does not offer its defense in a reasonably timely manner. (BL Policy 2008 (DE 40-1) at 45; UL Policy 2008 (DE 40-5) at 27). It is here undisputed that seven months elapsed between the time defendant tendered L&L's underlying counterclaims and plaintiff's formal notice to defendant of its decision to retain Brown. (Pl.'s Opp. Stmt. (DE

24

121) ¶ 60).  During that time, there were significant discovery and trial preparations in the underlying action, which defendant participated in by retaining independent counsel.  (Id.).

Defendant has introduced evidence that plaintiff's investigation was prolonged by repeated analyses by claims specialists and in-house counsel, engagement of outside counsel, auditors, and experts, as well as extended communications with defense counsel.  (See, e.g., id. ¶¶ 41-45, 69).  Plaintiff contests defendant's characterization of the process, and contends that "[defendant]'s own expert, Bryan Tilden, even opined that it would have been reasonable for [plaintiff] to have determined whether it was going to defend [defendant] before Thanksgiving 2012, which [plaintiff] did by contacting David Brown to act as defense counsel."  (Pl.'s Mem. (DE 114) at 20).

Where reasonableness of the investigation must ultimately be evaluated in light of these contested facts, summary judgment on the basis of breach by delayed action necessarily is precluded.

### iii.  Breach Based Upon Selection of Counsel

There is also a genuine issue of material fact as to whether plaintiff breached its duty to defend through its selection of Brown as defense counsel.  Defense by counsel necessarily is implied by the duty to defend the insured corporation against a "suit."  (BL Policy 2008 (DE 40-1) at 45; UL Policy 2008 (DE 40-5) at 27).  So too must that counsel be reasonably competent to "defend" against the suit.  See, e.g., R.C. Wegman Constr. Co. v. Admiral Ins. Co., 629 F.3d 724, 728 (7th Cir. 2011) (stating that insurer's duty to defend includes "the hiring of competent counsel" (quoting 4 Couch on Insurance § 202:17 (3d ed. 2007))).

Defendant has introduced evidence that the underlying suit concerned complicated issues of trademark law including competing claims to trademark ownership, and Brown focuses his practice on insurance law.  (Brown Depo. (DE 117-12) at 99:4-15; 114:17-20; 43:121-22 (65% of

25

federal cases involved insurance law)). None of Brown's awards, publications, bar admissions, professional affiliations, or speaking engagements have been related to trademark or intellectual property law except in the context of insurance coverage determinations. (Id. at 94:17-95:5; 99:16-103:11). Brown has handled one trademark infringement case, and that case did not involve comparable matters of trademark law at issue in the underlying case. (Id. at 82:1-3l 83:1-16; 86:24-17; 104:4-15; 105:4-106:10). That case also was settled a few months into the discovery process, prior to dispositive motions or trial. (Id. at 80:17-81:25).

Viewing these facts in the light most favorable to defendant, a factfinder reasonably could infer that plaintiff breached its duty to defend with competent counsel. Thus, summary judgment is inappropriate at this juncture.

In sum, plaintiff's motion for summary judgment on defendant's counterclaim for breach of contract on the basis of delay and selection of counsel is denied.[10]

### c.     Bad Faith

"In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." Bicycle Transit Auth., Inc. v. Bell, 314 N.C. 219, 228 (1985). North Carolina law indeed particularly "imposes on the insurer the duty of carrying out in good faith its contract of insurance." Alford v. Textile Ins. Co., 248 N.C. 224, 229 (1958). To establish a claim for bad faith against an insurer, the insured must prove "(1) a refusal to pay after recognition of a valid claim; (2) bad faith; and (3) aggravating or outrageous conduct." Topsail Reef Homeowners Ass'n v. Zurich

---

[10]     Defendant has also introduced evidence that it raised concerns with plaintiff's retention of Brown and plaintiff failed to respond to those concerns. As the court finds genuine issue of material fact precluding summary judgment on this count on the basis of the length of time that elapsed between tender and notification and choice of counsel, the court declines to address this additional basis for the purposes of deciding the instant motions.

Specialties London, Ltd., 11 F. App'x 225, 237 (4th Cir. 2001) (quoting Lovell v. Nationwide Mut. Ins. Co., 108 N.C. App. 416, 421 (1993)).

Bad faith does not arise where there is an "honest disagreement" regarding the validity of a claim.  Lovell, 108 N.C. App. at 421; see ABT Bldg. Prod. Corp. v. Nat' l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 125 n.32 (4th Cir. 2006); Danby, 25 F. App'x 186 at 194 n.9.  It also does not include an "honest mistake in judgment."   Abernethy v. Utica Mut. Ins. Co., 373 F.2d 565, 568 (4th Cir. 1967); see, e.g., Dailey v. Integon Gen. Ins. Corp., 75 N.C. App. 387, 396 (1985) (stating that bad faith means "not based on . . . innocent mistake").  Aggravated conduct includes "fraud, malice, gross negligence, insult . . . . [or] when the wrong is done willfully or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights."  Baker v. Winslow, 184 N.C. 1, 113 S.E. 570, 572 (1922); see Topsail, 11 F. App'x at 239.  When an insurer denies a claim that is reasonably in dispute based on a legitimate disagreement, the insurer is entitled to judgment as a matter of law because the plaintiff cannot establish bad faith or aggravated conduct on the part of the insurer.  Topsail, 11 F. App'x at 239.

Plaintiff contends there is no evidence that it recognized a duty to defend under the governing policies, or that its position of noncoverage was unreasonable.  The court agrees.

In opposition, defendant introduces into evidence a coverage report completed by Gross, the claims specialist assigned by plaintiff to determine coverage for the underlying counterclaims, wherein Gross reported that coverage of at least two counterclaims was "possible."  (Coverage Question Report (DE 120-21) at 2).  Gross, however, ultimately recommended that "no coverage be afforded" based in part on exclusions in the policies.  (Id. at 2).  Defendant additionally relies upon testimony provided by plaintiff's in-house counsel, Parsons, that the advertising injury

27

provisions of defendant's policies were "likely implicated" by the allegations in L&L's underlying counterclaims. (Parsons's Dep. (DE 120-27) at 83:18-84:20). Parsons's testimony, however, did not make a determination of coverage but rather was in response to a question that assumed "no exclusion applie[d]." (Id. at 83:18-84:2). He further clarified that he did not "know whether there [was] going to be a defense or indemnity required" but plaintiff still would "afford the insured the benefit of the doubt and provide a defense for those allegations against the insured." (Id. at 84:3-20; see also 85:22-86:1 ("We believed at the time that the information in our possession would support the fact that [L&L's underlying counterclaims] potentially implicated advertising injury." (emphasis added))).

Defendant also relies upon testimony by Oliver, plaintiff's corporate designee, that outside counsel recommended plaintiff obtain defense counsel for defendant in the underlying action. (Oliver's Dep. (DE 120-26) at 107:6-5). That testimony, however, did not provide the basis for counsel's recommendation, particularly whether outside counsel's recommendation followed from recognition of a valid claim as opposed to, for instance, reflecting a pervasive defensive tactic used to protect plaintiff's interests. See, e.g., Waste Mgmt. of Carolinas, Inc., 315 N.C. at 691 ("[T]he insurer's refusal to defend is at his own peril: if the evidence subsequently presented at trial reveals that the events are covered, the insurer will be responsible for the cost of the defense."). Indeed, due to redactions, the email upon which Oliver's testimony was based provides only that plaintiff should retain defense counsel "per [outside counsel's] recommendation," without more. (Oliver's Dep. (DE 120-26) at 107:3-10).

Defendant additionally relies upon two files wherein claims specialist Gross reports that the timing of the underlying claims is "ambiguous," and that plaintiff likely could not sustain the position that it was prejudiced by defendant's late tendering of the underlying counterclaims. (Pl.'s

Claims File dtd 10-19-2012 (DE 120-12); Pl.'s Claims File dtd 10-29-2012 (DE 120-12)). Even viewed in the light most favorable to defendant, however, neither notation demonstrates recognition of a valid claim, but rather evinces one claims specialist's opinion with regard to the sustainability of a single possible defense—the timing of tender. Finally, defendant introduces into evidence a report to plaintiff by retained auditors identifying only $106,500.00 of the $470,000.00 requested for defendant's reimbursement claim as subject to challenge. (Pl.'s Claims File dtd. 12-2014 to 4-2016 (DE 120-12)). That report, however, additionally notes that whether there is indeed a duty to defend had not yet been determined. (Id.).

As there is no evidence plaintiff recognized a duty to defend defendant against the underlying counterclaims, or that its failure to recognize such a duty was unreasonable, the court grants plaintiff's motion for summary judgment on defendant's counterclaim for bad faith.

        d.      Unfair and Deceptive Trade Practices

"A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." See Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68 (2000). North Carolina declares as unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). "In order to establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656 (2001).

Insurance law in North Carolina is governed by North Carolina General Statute § 58-63-15(11), which enumerates certain unfair claim settlement practices. Gray, 352 N.C. at 68. "[T]he acts proscribed in [N.C. Gen. Stat.] § 58–63–15(11) were designed to protect the consuming

public" based on the determination that the specified conduct is "inherently unfair, unscrupulous, immoral, and injurious to consumers." Id. at 70-71. In considering the intersection between North Carolina General Statute § 75-1.1 and § 58-63-15(11), the Fourth Circuit has explained as follows:

> North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, prohibits unfair and deceptive acts or practices, generally, and North Carolina's "Unfair Claim Settlement Practices" statute, N.C. Gen. Stat. § 58-63-15(11), defines unfair practices in the settlement of insurance claims. As relevant here, § 75-1.1 provides a private cause of action for violations, whereas § 58-63-15(11) does not; instead "the remedy for a violation of section 58-63-15 is the filing of a section 75-1.1 claim." Country Club of Johnston Cty., Inc. v. U.S. Fid. & Guar. Co., 150 N.C.App. 231, 563 S.E.2d 269, 278 (2002) (internal quotation marks omitted). Thus, an individual may file an independent § 75-1.1 claim, or may file a § 75-1.1 claim that relies on a violation of § 58-63-15(11). See Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 529 S.E.2d 676, 684 (2000).

Elliott v. Am. States Ins. Co., 883 F.3d 384, 396 (4th Cir. 2018). Unlike with allegations of common law bad faith, good faith is not a defense to an alleged violation of N.C.G.S. § 58-63-15(11). See Gray, 352 N.C. at 68 ("Good faith is not a defense to an alleged violation of [N.C. Gen. Stat.] § 75–1.1.").

Defendant contends plaintiff violated § 58-63-15(11)(a), (b), (c), (d), (e), (g), (h), (m), and (n). Plaintiff moves for summary judgment on all subsections, and defendant moves for partial summary judgment, limited to those parts pertaining to plaintiff's conduct with respect to defendant's reimbursement claims.

The court addresses each subparagraph in turn. Where neither the Supreme Court of North Carolina nor the United States Court of Appeals for the Fourth Circuit, when interpreting North Carolina law, has analyzed the subparagraphs in question, the court relies on the plain language of the statute and the exemplary analyses of the provisions by its sister courts in the circuit and North Carolina's Court of Appeals.

        i.       § 58-63-15(11)(a)

Defendant contends plaintiff's reservation of rights letters "misrepresent[] pertinent facts or insurance policy provisions relating to coverages at issue," in violation of N.C.G.S. § 58–63–15(11)(a). Construed in the light most favorable to defendant, such a misrepresentation may be inferred from certain language in the reservation of rights letters.

In particular, while these letters communicate clearly a reservation of rights sufficient to overcome defendant's waiver argument, addressed previously, those that include excerpts from the policies omit reference to the breach of contract exclusion of the umbrella policy, and they include other exclusions that are unrelated to the L&L counterclaims. (See Reservation of Rights Letter 8-7-2012 (DE 123-6); Reservation of Rights Letter 1-15-2013 (DE 123-7); Reservation of Rights Letter 3-14-2013 (DE 123-8)).

None of the letters include discussion of plaintiff's position as the various provisions, nor do they explain how the allegations in L&L's counterclaims might create coverage issues. (See id.; Reservation of Rights Letter 7-18-2012 (DE 123-5)). Thus, it is reasonable to infer in this respect that they "[m]isrepresent[] pertinent facts or insurance policy provisions relating to coverages at issue." N.C. Gen. Stat. § 58-63-15(11)(a) (emphasis added).

Therefore, summary judgment in favor of plaintiff on this part of defendant's claim must be denied.

ii. § 58-63-15(11)(b)

Subparagraph (b) enumerates "[f]ailing to acknowledge and act reasonably promptly upon communications" relating to a claim under an insurance policy as an unfair claim settlement practice. Courts in North Carolina have eschewed a bright line deadline to constitute unreasonable delay, concluding for example that a delay in communication of "54 days is not enough, by itself to show an unfair settlement practice." See, e.g., First Protective Ins. Co. v. Rike, 516 F. Supp. 3d

31

513, 533-34 (E.D.N.C. 2021); Meadlock v. Am. Fam. Life Assur. Co., No. COA11-1009, 2012 WL 2891079, at *7 (N.C. Ct. App. July 17, 2012) (explaining that a four-month delay in communication, in and of itself, was not unreasonable and that further evidence was needed to determine whether that delay was reasonable or not). Instead, courts have looked to whether "[t]he responses were reasonably prompt under the circumstances." Federated Mut. Ins. Co. v. Williams Trull Co., 838 F. Supp. 2d 370, 423 (M.D.N.C. 2011). However, the fact that a defendant insurer "fail[s] to respond to multiple communications" militates towards a conclusion that they have not acknowledged and acted reasonably promptly upon communications. Guessford v. Penn. Nat. Mut. Cas. Ins. Co., 918 F. Supp. 2d 453, 465 (M.D.N.C. 2013).

Defendant has introduced evidence of appreciable delays or lapses in communications following defendant's tender of L&L's counterclaims and of its reimbursement claim. For instance, defendant introduced letters and emails from defendant's president, Golasa, and from its corporate secretary, Ray, to claims specialist Gross inquiring of plaintiff's retention of defense counsel and of the status of defendant's reimbursement claim, which defendant contends went unanswered. (See Golasa's Letter dtd 1-25-13 (DE 120-8) (questioning why plaintiff hired "a second law firm" for the case and asking if plaintiff "is going to reimburse [defendant] for the money that it has spent so far defending [in the underlying action]"); Maeyan Golasa's Decl. 13 (DE 120-30) (declaring that defendant received no response to the 1-25-13 email); Ray's Email dtd. 2-4-13 (DE 128-4)). Plaintiff argues, however, that these letters were never received, and all other communications were timely responded to. (See, e.g., Pl.'s Opp. Stmt. (DE 121) ¶¶ 54-56).

There thus remain material disputes of fact as to plaintiff's liability under North Carolina General Statute § 58-63-15(11)(b), and the court denies plaintiff's and defendant's motions under this subparagraph.

32

iii.    § 58-63-15(11)(c) and (d)

North Carolina General Statute § 58-63-15(11) deems it unlawful to "[f]ail[] to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies," N.C. Gen. Stat. § 58-63-15(11)(c), and to "[r]efus[e] to pay claims without conducting a reasonable investigation based upon all available information," N.C. Gen. Stat. § 58-63-15(11)(d).

Defendant has introduced evidence that plaintiff underwent an investigation to determine liability under the policies which endured for seven months and involved engagement of multiple specialists. Where determination of the reasonableness of these procedures and the promptness of the investigation hinges on contested facts previously discussed, the court denies summary judgment under subparagraphs (c) and (d).

iv.    § 58-63-15(11)(e), (g), (h), and (m)

Subparagraphs (e), (g), (h), and (m) all govern an insurer's conduct once liability under the governing policy is either reasonably clear or not disputed. Defendants claims under these subsections accordingly fail for the same reason defendant's crossclaim for common law bad faith failed—defendant has not introduced evidence that liability under the policies was reasonably clear prior to issuance of this order.

North Carolina General Statute § 58-63-15(11)(e) makes it an unfair and deceptive trade practice for insurance companies to "[f]ail[] to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed." N.C. Gen. Stat. § 58-63-15(11)(e). The plaintiff however disputed liability under the policies up through and including the instant motion before the court, and no evidence on the record indicates that dispute was wholly

33

unreasonable. Therefore, the court finds as a matter of law that defendant did not engage in any unfair or deceptive acts in violation of subsection (e).

Section 58-63-15(11)(g) prohibits "[c]ompelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured." N.C. Gen. Stat. § 58-63-15(11)(g). As no amount is "due" until liability is determined, typically this subsection "require[s] that the coverage issue be determined in favor of the insured." Elliott v. Am. States Ins. Co., 883 F.3d 384, 398 (4th Cir. 2018). The subsection by its terms additionally requires that the insurer offer "substantially less than the amounts ultimately recovered" by the insured before there is a violation. N.C. Gen. Stat. § 58-63-15(11)(g). Here, liability has only just been announced in this written decision, and there has not yet been a determination of the amount defendant ultimately will recover.

Thus, the court finds as a matter of law that plaintiff did not violate subsection (g). For the same reason, defendant's claim under subsection (m), prohibiting "[f]ail[ure] to promptly settle claims where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage," also fails. N.C. Gen. Stat. § 58-63-15(11)(m).

Finally, subsection 58-63-15(11)(h) prohibits "[a]ttempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled." N.C. Gen. Stat. § 58-63-15(11)(h). Where liability has not been conclusively determined, it cannot be said that a reasonable person would believe himself entitled to either the maximum coverage provided under the policy, or the amount ultimately recovered, before the fact or amount of liability had been determined. Elliott v. Am. States Ins. Co., 883 F.3d 384, 398-99 (4th Cir. 2018) ("The mere fact

34

of having [] coverage does not entitle the insured to recover at all."). Thus, the court determines as a matter of law that plaintiff did not violate subsection (h) by making settlement offers for less than the entire amount claimed in defendant's reimbursement claim. The court accordingly grants plaintiff's motion for summary judgment as to this part of defendant's counterclaim.

v.      § 58-63-15(11)(n)

Lastly, subsection (n) requires insurers to "promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts . . . for denial of a claim or for the offer of a compromise settlement." N.C. Gen. Stat. § 58-63-15(11)(n). Defendant contends plaintiff denied its reimbursement claim by failing to respond to it, and in its failure to respond, plaintiff additionally failed to provide reasonable explanation for its denial. (Def.'s Resp. (DE 127) at 23). Defendant does not cite to any case law supporting its construction of subsection (n), and the court declines to extend the subsection's reach by adopting it, particularly where subsection (b) overtly addresses a failure to communicate.

In sum, the court grants plaintiff's motion for summary judgment under N.C. Gen. Stat. § 58-63-15(11)(e), (g), (h), (m), and (n), but denies it under subsections (a), (b), (c), and (d). As the court finds there remains dispute of material fact as to these subsections, the court additionally denies defendant's motion for partial summary judgment. Where the court denies defendant's partial motion, and the extent of liability under those subsections has not been determined, the court also denies defendant's motion on the amount of damages under N.C. Gen. Stat. § 58-63-15(11).

**CONCLUSION**

Based on the foregoing, plaintiff's motion for summary judgment (DE 113) is GRANTED IN PART and DENIED IN PART as set forth herein. Defendant's motion for partial summary

judgment (DE 116) is GRANTED IN PART and DENIED IN PART, as set forth herein. Those parts of the motions seeking a declaration of coverage as a matter of law are resolved as follows:

1. Plaintiff was obligated under the insurance policies to defend defendant against L&L's original counterclaims. Accordingly, plaintiff's claims for declaration of noncoverage under the insurance policies are DISMISSED as to L&L's original counterclaims, and defendant's claim seeking a declaration of coverage and establishing a duty to defend against L&L's original counterclaims under the insurance policies is GRANTED.

2. Defendant's duty to defend under the insurance policies terminated upon the October 3, 2014, dismissal order in the underlying action, and the duty was not re-triggered by L&L's filing of its amended counterclaims on February 23, 2017. Accordingly, plaintiff's claims for declaration of noncoverage under the insurance policies are GRANTED as to L&L's amended counterclaims, and defendant's claim seeking a declaration of coverage and establishing a duty to defend against L&L's amended counterclaims under the insurance policies is DISMISSED.

3. That part of plaintiff's claim seeking declaratory judgment that it has no duty to indemnify defendant is DENIED AS MOOT.

The following parts of defendant's counterclaims additionally are DISMISSED:

1. Counterclaim III: breach of the implied covenant of good faith and fair dealing;

2. Counterclaim IV: unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 58-63-15(11)(e), (g), (h), (m), and (n)

The following parts of defendant's counterclaims remain for adjudication at trial:

1. Counterclaim II: breach of contract on the basis of delay and selection of counsel;

2. Counterclaim IV: unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 58-63-15(11) (a), (b), (c), and (d), including the amount to be awarded for its reimbursement claim, if anything.

Where additional claims remain for trial in accordance with case management order as amended August 23, 2021, this case now is ripe for entry of an order governing deadlines and procedures for final pretrial conference and trial. The parties are DIRECTED to confer and file within 14 days from the date of this order a joint status report informing of 1) estimated trial length; 2) particular pretrial issues which may require court intervention in advance of trial, if any; and 3) at least three suggested alternative trial dates. In addition, the parties shall specify if they wish to schedule a court-hosted settlement conference or additional alternative dispute resolution procedures in advance of trial, and if so the date for completion of such.

SO ORDERED, this the 30th day of September, 2022.

LOUISE W. FLANAGAN
United States District Judge

37