IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

BEACH MART, INC.,

      Plaintiff,

v.

PENNSYLVANIA NATIONAL MUTUAL
CASUALTY INSURANCE COMPANY,

      Defendant.

2:14-cv-00008-FL

**BEACH MART'S RESPONSE TO PENN NATIONAL'S MOTION *IN LIMINE* TO
EXCLUDE LAY OPINIONS, OTHERWISE INADMISSIBLE EXPERT TESTIMONY,
AND RELATED ARGUMENTS OF COUNSEL**

## I.    INTRODUCTION

Plaintiff Beach Mart, Inc. ("Beach Mart") respectfully submits this Response to Penn

National's first Motion *in Limine* to:

> 1) exclude all expert testimony and related documents from individuals who were not
> previously designated as experts, 2) exclude all expert opinions and related documents that
> were not previously disclosed, 3) exclude testimony from designated experts and related
> documents on subjects for which they lack the proper expertise, 4) exclude purported
> expert opinions and related documents which include legal conclusions or otherwise invade
> the province of the Court or are not helpful to the jury, and 5) exclude arguments of Beach
> Mart's counsel pertaining to these subjects.

Dkt. 150, at 1 (the "Motion"). In support of its Motion, Penn National submitted a memorandum

of law (the "Memorandum") which reveals that Penn National seeks nothing more than an advisory

opinion from the Court that Beach Mart should follow the Federal Rules of Civil Procedure, the

Federal Rules of Evidence, and all other applicable rules and governing law. *See* Dkt. 151.

Accordingly, Penn National's Motion is improper, and the Court should deny it without prejudice

or hold it in abeyance unless and until an actual dispute arises.

1

## II. STATEMENT OF THE REVELANT FACTS

For the sake of brevity, Beach Mart only addresses the statements from Penn National with which it disagrees or otherwise takes issue. In its Motion, Penn National states "large sections of [Beach Mart's legal] invoices are redacted or are block-billed. Consequently, Beach Mart's legal invoices lack sufficient detail and information to deduce what entries are related to the defense of the counterclaims as opposed to the prosecution of Beach Mart's affirmative claims, the latter being a claim for which Beach Mart should not be reimbursed." Dkt. 150, at ¶ 5. Beach Mart takes issue with this gross exaggeration of the redactions, but rather than argue in the abstract, Beach Mart directs the Court to all of the relevant invoices, Dkt. 120-10 (6/2012 to 1/2013), Case No. 2:11-cv-44 at Dkt. 704-17 (2013 invoices), and Case No. 2:11-cv-44 at Dkt. 704-18 (2014 invoices) so the Court may judge for itself. Beach Mart further relies on its opposition to Penn National's Motion in Limine No. 3 Regarding Beach Mart's Damages Claim as to why all such documents are relevant, admissible, and probative, and why substantial witness testimony will be available at trial to demonstrate why these invoices are wholly related to and arise entirely from Beach Mart's defense of the L&L Counterclaims.

In Paragraph 10 of its Motion, Penn National states that "Beach Mart may attempt to offer into evidence inadmissible opinion testimony and related documents or present arguments from its attorneys regarding the following subjects" and then lists several categories. Dkt 150, at ¶ 10. Oddly, Penn National then cites to Beach Mart's sole designated expert, Mr. Tilden, in which Mr. Tilden **confirms** he is not and will not offer some of the very opinions with which Penn National is evidently concerned. *See* Dkt. 150, at ¶ 11.

Finally, Penn National incorrectly projects that Beach Mart "may also attempt to argue through its attorneys or offer into evidence opinion testimony and related documents on subjects

requiring subject matter expertise from individuals who were not previously-identified as experts, including, but not limited to, Beach Mart's personal counsel E. Crouse Gray, Jack Hicks and Arthur DeBaugh." Dkt. 150, at ¶¶ 12-13. As discussed below, as well as in Beach Mart's other responses to Penn National's motions *in limine* and Beach Mart's Trial Brief, Penn National wholly ignores that these individuals have information relevant to the claims and defenses gained through their personal involvement in the case and can thus testify to certain topics based on their own personal knowledge. Beach Mart does not intend to solicit any expert opinion testimony from these individuals which required disclosure under Rule 26(a)(2).

## III.   LEGAL ARGUMENT

As an initial matter, Beach Mart does not dispute Penn National's general statements of the law in its Memorandum. However, Beach Mart does dispute that the Motion and Memorandum are even necessary. As noted above, Penn National's Motion and Memorandum are asking the Court for an advisory opinion that the rules apply to Beach Mart based solely on Penn National's subjective speculation that Beach Mart may attempt to subvert or otherwise fail to follow the rules. On this basis alone, and given that Beach Mart has every intention of following all applicable laws, rules, and orders of this Court, the Court should simply deny Penn National's Motion without prejudice unless and until there is an actual dispute or controversy.[1]

Next, Penn National explains the applicable law regarding expert disclosures pursuant to

---

[1] Beach Mart also filed a motion regarding Penn National's designated expert, David Paige, but there are two key distinctions necessitating Beach Mart's motion, which are absent in Penn National's Motion. First, at the time Penn National disclosed Mr. Paige, it attempted to argue that it was a timely disclosure despite it quite obviously not being timely. *See* Dkt. 95. Additionally, when Beach Mart's counsel specifically asked about Mr. Paige in a meet and confer on August 18, 2023, Penn National's counsel explicitly stated that they believe circumstances have changed and that for as-of-yet undisclosed reasons, the Court's ruling at Docket 95 no longer applies to Penn National. Thus, as to Beach Mart's Motion *in Limine* No. 7, unlike in this motion, there is an actual dispute.

Federal Rule of Civil Procedure 26(a)(2) for the first five pages of its Memorandum with the following request: that "the only potential expert witness that Beach Mart may be able to elicit expert opinions from is Mr. Tilden, and those opinions must be confined to those in his single expert report and deposition from June 23, 2021." Beach Mart agrees that Mr. Tilden is Beach Mart's only expert designated pursuant to Rule 26(a)(2) and that his testimony must be limited to that which was in his expert report. Penn National also argues that "Mr. Tilden should not be allowed to testify regarding the reasonableness, necessity, or relatedness of Beach Mart's purported legal invoices regarding the defense of the underlying counterclaims as this opinion was not previously disclosed." Again, Beach Mart agrees with Penn National to the extent Mr. Tilden is bound by his timely served expert disclosures. In fact, Mr. Tilden explicitly testified in deposition that he does not have any opinions in this case as to legal billing. *See* Deposition of Bryan Tilden, Dkt. 117-8, at 135:16-18 (Q. And you don't purport to offer any opinions in this case as to legal billing? **A.** No, sir."). Again, the premise of Penn National's Motion and Memorandum is that Beach Mart intends to disregard the rules, despite sworn testimony showing the exact opposite. Penn National's Motion is unnecessary and should be denied accordingly.

In a similar vein, Penn National spends the next several pages arguing that "[i]t is well-settled that expert opinions that state legal standards or draw legal conclusions are generally inadmissible at trial." Dkt. 151, at 6. While this general statement of the law is correct, as the Fourth Circuit has recognized, "in some circumstances, opinion testimony that arguably states a legal conclusion is helpful to the jury, and thus, admissible." *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) (quoting Weinstein's Federal Evidence § 704.04[2][a] (2d ed. 2001)). "The best way to determine whether opinion testimony contains legal conclusions, is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law

different from that present in the vernacular." *Barile*, 286 F.3d at 760. "To determine when a question posed to an expert witness calls for an improper legal conclusion, the district court should consider first whether the question tracks the language of the legal principle at issue or of the applicable statute, and second, whether any terms employed have specialized legal meaning." *Id.* "In many circumstances, a problematic question can be more carefully phrased to elicit similar information yet avoid a response that constitutes a mere legal conclusion." *Id.*

Beach Mart acknowledges that Mr. Tilden may not be permitted to opine on legal conclusions or use terms which have a "separate, distinct and specialized meaning in the law." Beach Mart also acknowledges that it would be a waste of time for Mr. Tilden or regurgitate any legal rulings this Court has already made, and thus such opinions are unnecessary. Against this backdrop, Beach Mart again contends Penn National's motion is unnecessary and should be denied without prejudice.

Although Penn National does not include any argument in its Memorandum regarding Beach Mart's counsel E. Crouse Gray, Jack Hicks, and Arthur DeBaugh, its Motion does request that the Court limit their testimony, to the extent they may offer any, on the subject matters of Messrs David Brown and David Harris's qualifications and the reasonableness of Beach Mart's legal expenses and invoices.[2] As Beach Mart noted in its Trial Brief, Dkt. 195, Penn National has raised a straw-man argument here and in other motions (*e.g.*, Dkt. 152, seeking to limit lay testimony which "which exceeds their personal knowledge under F. R. Evid. 602") in seeking to limit testimony of Rule 30(b)(6) witnesses, but Penn National ignores that these witnesses can also

---

[2] In addition to the reasons explained in this Response, the Court should further deny Penn National's requested relief as to E. Crouse Gray, Jack Hicks, and Arthur DeBaugh to the extent Penn National fails to provide briefing in support of this request pursuant to Local Civil Rules 7.1(e) and 7.2(a).

testify based on their extensive personal knowledge of the facts and events of this case.

During discovery, Penn National sought extensive Rule 30(b)(6) testimony from Beach Mart, and Beach Mart complied by designating three witnesses to answer Penn National's questions directed at Beach Mart. The witnesses were three lawyers: Jack Hicks, Arthur DeBaugh, and Grouse Grey. Penn National now seeks to challenge the testimony those witnesses may give and challenge Beach Mart's ability to introduce any evidence of damages. But Penn National did not notice or seek those witnesses' lay testimony, in their own capacity as percipient witnesses.

Each of these witnesses can give opinion testimony under Rule 701. Rule 701 provides for the admission of lay opinion testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge [for which an expert would be required]." *U.S. v. Baraloto*, 535 Fed. Appx. 263, 270 (2013) (opinion testimony from convicted criminals surrounding known-drug addicts who "fenced" thousands of dollars of over-the-counter medicine at buy-sale resell shop for pennies on the dollar properly admitted as lay opinion testimony). Rule 701 permits a lay witness to "offer an opinion on the basis of relevant historical or narrative facts that the witness has perceived." *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000).

Lay opinion testimony includes the conclusions people ordinarily make based on their experience and occupation—such as that the tread on a pair of shoes was similar to the design of footprints at a crime scene (*State v. Jackson*, 302 N.C. 101 (1981); *Smith v. State*, 725 So.2d 922 (Miss. Ct. App. 1998)) or that graffiti is a gang sign (*United States v. Najera*, 2013 WL 2254501 (D. Kansas)). Once personal knowledge, rational basis, experience, and helpfulness are established, courts routinely admit lay opinion or skilled opinion testimony. *United States v.*

*Perkins*, 470 F.3d 150, 156 (4th Cir. 2006) (police officers allowed to testify that fellow officer's use of force was reasonable at a particular crime scene when based on "contemporaneous perceptions" but other officers who did not witness the officer's use of force could not provide lay testimony because this would be expert opinion based on second-hand information).

Similar lay opinion testimony includes the caliber of a gun (for a witness familiar with guns) or the smell of marijuana within a car. *Osbourn v. State*, 92 S.W.3d 531 (Tx. Ct. Crim. App., 2002). Police officers can give their opinion about coded words used by criminals to describe drugs, crimes, or terrorist acts. *U.S. v. Belanger*, 890 F.3d 13 (5th Cir. 2018). A gang member can give an opinion what rap lyrics mean. *People v. Minnifield*, 2014 WL 6657699 (Ill. App.). An experienced nurse could testify as to how she personally interpreted a fetal heart monitor. *Linton v. Davis*, 887 N.E.2d 960 (Ind. App. 2008). An experienced martial arts teacher who viewed a fight could testify that the defendant had probably stabbed himself. *Mariscal v. State*, 687 N.E.2d 378 (Ind. App. 1997). A customs inspector could testify that a person appeared nervous. *United States v. Mastberg*, 503 F.2d 465 (9th Cir. 1974). A police officer could testify that someone appeared drunk. *State v. Hall*, 353 N.W.2d 37 (S.D. 1984). Lay opinion testimony that employees were "nervous and afraid" was a shorthand report of witnesses' observations of employee reactions. *Kerry Coal Co., v. United Mine Workers*, 637 F.2d 957, 967 (3d Cir. 1981). Police officers who had become familiar with the smell of toluene, the intoxicant in glue-sniffing, could testify that the substance used by defendant smelled of toluene. *Vasquez v. State*, 741 N.E.2d 1214 (Ind. 2001).

In *MCI Telecommunications Corp. v. Wanzer*, the Fourth Circuit held that a bookkeeper should be allowed to testify regarding a projection of profits that she prepared "predicated on her personal knowledge and perception." 897 F.2d 703, 706 (4th Cir. 1990). Similarly, an attorney who formed opinions during his handling of the underlying case could give lay opinion testimony

in the bad faith lawsuit on reasonable settlement value of underlying case and was not required to be designated as an expert under Rule 26. *Modern Auto. Network, LLC v. Eastern Alliance Ins. Co.*, 416 F. Supp. 3d 529, 535-36 (M.D.N.C. 2019), *aff'd*, 842 Fed. Appx. 847 (4th Cir. 2021).

Penn National's entire argument rests upon the (incorrect) assumption that Mr. Hicks, Mr. Gray, and Mr. DeBaugh seek to give testimony beyond their personal knowledge and lay opinions. For example, Jack Hicks was personally involved in the strategy, staffing, selection of counsel, and orchestration of the first several years of the underlying litigation. He has decades of experience in significant intellectual property matters. He staffed the matter with Charles Burke and Stephen Shaw. He regularly updated the client (Beach Mart) with the status of the case. He supervised the execution of the litigation strategy, he identified defenses such as "naked licensing" that could be used to refute L&L's Counterclaims, and he reviewed legal research and proposed briefing of issues. All of these facts are borne out in the billing narratives and invoices, and Mr. Hicks can testify to those issues based on his personal knowledge. And importantly, he reviewed every prebill each month, edited those prebills (which included removing or reducing fees), had the final versions of the bills sent to Beach Mart, and received notification every time a bill was paid. Jack Hicks knew of the severity of the claims against Beach Mart and knew L&L had hired lawyers from the New York City office of Morgan Lewis & Bockius—one of the largest firms in America—to destroy Beach Mart's small business in New Bern. This is entirely based on his personal experience and percipient witness observations and is not excluded by a purported lack of personal knowledge.

Crouse Grey has served as the outside counsel for Beach Mart for decades. He has had countless conversations with Wendy Ray and Israel Golasa over the years. He can testify based on his personal experience, personal knowledge, and continual interactions with Beach Mart. As

outside counsel, he has made countless first-hand observations about the company and its management for years. He serves as outside counsel, handling some matters and referring out others depending on the degree and type of legal services needed. Deposition of Beach Mart Pursuant to Fed. R. Civ. P. 30(b)(6), Given by Crouse Grey, Dkt. 117-9, at 16-17, 39:5-40:4. This includes the process by which Beach Mart selected its counsel in the L&L case. *Id.* at 40:11-42:2. The process that Beach Mart uses to obtain insurance. *Id.* at 49:11-21. Mr. Grey has personal knowledge based on his observations related to Penn National's unfair and deceptive treatment of Beach Mart. *Id.* at 80:7-82:2; 96:8-24. Mr. Grey has years of experience and personal interaction with Beach Mart and its management. Penn National did not inquire about this from Mr. Grey.

Similarly, Arthur DeBaugh also has personal knowledge and experience working for Beach Mart during this time period, as demonstrated in the 30(b)(6) deposition which he gave. His testimony in that deposition was largely related to the retention of David Brown as defense counsel, telephone conversations which Mr. DeBaugh had with Greg Gross of Penn National. There were also lines of questioning related to the work performed by Womble (which relates to Beach Mart's damages claim).

Moreover, each of these witnesses can testify regarding the nature of the attorneys' fees sought as damages by Beach Mart. Courts routinely admit testimony from attorneys regarding whether fees are reasonable (both regarding rate charged, and hours expended) and the attorneys are rarely subjected to the scrutiny of Rule 702. Rather, the testimony is admitted under Rule 701. Each of these attorneys is qualified to give an opinion under Rule 701 regarding the complexity of the work, the hours expended, the rates charged, and other factors. This is particularly so as recent caselaw in the Eastern District and Fourth Circuit has approved partner rates in excess of $900 per hour; an hourly rate far in excess of what is being sought here. *Tarlton for McCollum v. Allen*, No.

9

5:15-CV-451, 2021 WL 10319395 (E.D.N.C., Nov. 5, 2021, (awarding $6.25 million in fees to Hogan Lovells of Washington D.C., based on fee application containing block billing entries) *aff'd*, *Gilliam v. Allen*, 62 F.4th 829, 850-51(4th Cir. 2023).

However, while Beach Mart presents this this legal argument out of an abundance of caution, it cannot be stressed enough that there is no actual dispute currently before the Court regarding any proposed testimony or evidence. Penn National's Motion asks for a Court order that Beach Mart follow applicable laws, rules, and orders of this Court. To the extent Penn National has pointed to deposition testimony, that testimony supports Beach Mart's assurances that it has previously followed, and intends to continue following, the rules. Accordingly, Penn National's Motion is unnecessary and should be denied.

## IV.   **<u>CONCLUSION</u>**

For the reasons stated above and in the absence of any genuine dispute at this juncture, Beach Mart respectfully requests that the Court deny Penn National's Motion without prejudice or hold it in abeyance unless and until an actual dispute arises.

Respectfully submitted, this 23rd day of August, 2023.

*/s/ John D. Wooten IV*
Charles A. Burke (NC State Bar No. 19366)
Stephen F. Shaw (NC State Bar No. 41582)
John D. Wooten IV (NC State Bar No. 51074)
WOMBLE BOND DICKINSON (US) LLP
300 North Greene Street, Suite 1900
Greensboro, NC 27401
Phone: 336.574.8052
Fax: 336.574.4521
charles.burke@wbd-us.com
stephen.shaw@wbd-us.com
jd.wooten@wbd-us.com

Jonathan R. Reich (NC State Bar No. 41546)
WOMBLE BOND DICKINSON (US) LLP

10

One West Fourth Street
Winston-Salem, NC 27101
Telephone: 336.721.3623
jonathan.reich@wbd-us.com

*Attorneys for Beach Mart, Inc.*