IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:14-CV-8-FL

| | | |
|---|---|---|
| BEACH MART, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| PENNSYLVANIA NATIONAL MUTUAL | ) | |
| CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

At trial, on December 12, 2023, defendant objected to the admission of Exhibits 105 and

106 on the basis of, among other grounds, lack of authenticity. The instant memorandum opinion

memorializes the court's reasons for overruling defendant's objection on this ground and allowing

admission of said exhibits.

A.      Requirements for Authentication

"To satisfy the requirement of authenticating or identifying an item of evidence, the

proponent must produce evidence sufficient to support a finding that the item is what the proponent

claims it is." Fed. R. Evid. 901(a). "However, 'the burden to authenticate under Rule 901 is not

high.'" United States v. Recio, 884 F.3d 230, 236–37 (4th Cir. 2018) (quoting United States v.

Hassan, 742 F.3d 104, 133 (4th Cir. 2014)). "The district court must merely conclude that the jury

could reasonably find that the evidence is authentic, not that the jury necessarily would so find."

Id.

"It is up to the jury to decide whether evidence is that which the proponent claims." United

States v. Zhu, 854 F.3d 247, 257 (4th Cir. 2017). "It is the district court's role . . . to serve as

gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which

the jury could reasonably find that the evidence is authentic." Id. "[A] proponent need not

establish a perfect chain of custody or documentary evidence to support their admissibility."

United States v. Vidacak, 553 F.3d 344, 350 (4th Cir. 2009).

"[E]vidence that satisfies [this] requirement" includes, but is not limited to, "[t]estimony

of a witness with knowledge . . . that an item is what it is claimed to be," Rule 901(b)(1) (emphasis

added), or through the "appearance, contents, substance, internal patterns, or other distinctive

characteristics of the item, taken together with all the circumstances." Rule 901(b)(4).

In context of the authentication rule, "the connection between a letter and its intended

recipient or source can be established by circumstantial evidence, including its contents." United

States v. Cornell, 780 F.3d 616, 630 (4th Cir. 2015). "[T]he prima facie showing may be

accomplished largely by offering circumstantial evidence that the documents in question are what

they purport to be." United States v. Davis, 918 F.3d 397, 402 (4th Cir. 2019). It may be pertinent

to this analysis whether the defendant has offered any "basis for inferring that the exhibits were

forged or altered that would arouse this Court's suspicion as to their authenticity." Vidacak, 553

F.3d at 351.

B.     Application

The issue raised by defendant's objection, in pertinent part, was whether Exhibits 105 and

106 may be authenticated through the testimony of Maeyan Golasa, as it was presented by him at

trial on December 12, 2023. For the following reasons, the court finds that the testimony of

2

Maeyan Golasa is sufficient to meet the requirements of authentication of Exhibits 105 and 106, when the testimony is considered together with the contents and context of the exhibits.

As relevant to the instant analysis, Maeyan Golasa testified upon direct examination that he has "access and oversight of all the business records of Beach Mart."[1]  He stated "everything goes through Wendy Ray in the office," and he "share[s] offices with her."  "[S]he will show [him] certain documents that [he] need[s] to look over throughout the day."  He described the two "company e-mail accounts," including the one used for "litigation and legal matters and sensitive topics."  Only he and Wendy Ray have access to that account.

With respect to the subject matter of Exhibit 105, Maeyan Golasa testified that he remembered discussing with his "father and Wendy" "questions about the lawyers that Penn National selected."  He stated: "We sent them an e-mail questioning them," and he stated he was "personally involved in that correspondence."

Maeyan Golasa identified the email address "beachmartfin@gmail.com" as the one that he and Wendy Ray use.  He had access to that e-mail account at the time.  He also testified "I remember seeing this" in reference to Exhibit 105.  Concerning pages 2-3 of the exhibit, he testified: "Wendy or myself were the ones that were involved in helping him prepare this letter," and Maeyan Golasa was specifically "involved in discussing these question with [his father] and what this document should say."

On re-direct, Maeyan Golasa further specified he had a role in "discussing the letter" in Exhibit 105 and Wendy Ray "would have been the one to type it."  He also stated he knew it was sent from the Beach Mart email account.  And Wendy Ray "sent it at the instruction of [his] father."

---

[1]    Quotations of testimony in this memorandum opinion are based upon the court's rough notes of testimony at trial on December 13, 2023, where an official transcript has not yet been filed.

The foregoing is sufficient to meet the "prima facie showing" through "circumstantial evidence" that Exhibit 105 is what the proponent – here plaintiff – says it is, that is an email with an attached letter from Beach Mart to Greg Gross.  Davis, 918 F.3d at 402.

Defendant's argument that the Exhibit 105 lacks foundation because Maeyan Golasa "testified he didn't know who wrote it," does not preclude the court from finding the exhibit authentic.  It is enough that he is personally familiar with the circumstances surrounding the preparation of the letter, coupled with his familiarity with the email account and the contents of the letter.

The precise authorship of the letter in Exhibit 105, or even whether it was in fact received by Gross, are issues for the jury that do not in themselves undermine the authenticity of the Exhibit itself.  See, e.g., Recio, 884 F.3d at 237 ("[W]hat matters is not whether a jury could find that Recio did not author the post in question, but rather whether the jury could reasonably find that he did.  Given the strong evidence that the Facebook account was Recio's, and without any evidence of unauthorized access, the jury could find that Recio was the true author of the post.") (emphasis in original).

Exhibit 106 is covered more briefly in the re-direct testimony, but it is also sufficiently authenticated by all the foregoing circumstances, plus the specific testimony of Maeyan Golasa that Exhibit 106: 1) was sent from "the same e-mail account that the other e-mail was sent from," 2) he knew this e-mail "was sent at the time it was sent," 3) he was "involved in the discussions that led to the sending of this e-mail," 4) he discussed with his father "what he wanted this follow up email to say," and 5) he was "aware that Wendy Ray sent it from this e-mail account."

4

In sum, under all the circumstances, the fact that Wendy typed and sent the emails and the letter is no matter to the authenticity of Exhibits 105 and 106. It is sufficient that the circumstantial evidence shows that it came from that Beach Mart email account, at the time and date stated on their face, and there is no evidence to infer unauthorized access or fabrication. Resolving any doubts about "whether [this] evidence is that which the proponent claims" is "up to the jury to decide." Zhu, 854 F.3d at 257.

**CONCLUSION**

For the foregoing reasons, the court overruled defendant's objection to admission of Exhibits 105 and 106 on the ground of lack of authenticity.

This the 13th day of December, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge